565 A.2d 1212

**COMMONWEALTH of Pennsylvania**

v.

**Andre HART, Appellant.**

Superior Court of Pennsylvania.

Submitted March 20, 1989.

Filed Nov. 8, 1989.

Norris E. Gelman, Philadelphia, for appellant.

Donna G. Zucker, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before DEL SOLE, BECK and MONTGOMERY, JJ.

BECK, Judge:

This appeal involves the question of the validity of a progression charge in a homicide case; i.e., whether the trial court may instruct the jury not to consider whether the defendant is guilty of voluntary manslaughter until after it has considered whether the defendant is not guilty of murder. Appellant contends that his counsel was ineffective for failing to object to the progression charge. We find that the the court's instruction was proper and that counsel provided effective representation.

I.

On August 11, 1975, Albert Dixon, an Exxon employee, was fatally wounded during an attempted robbery of an Exxon service station. The crime remained unsolved until 1984 when the police received information implicating Andre Hart and Barry Patterson. Hart was charged with murder, robbery, and criminal conspiracy and tried before a jury in the Philadelphia Court of Common Pleas. At trial, Patterson testified for the Commonwealth that he and Hart had conspired to rob Dixon. Patterson further testified that Hart had approached Dixon while armed with a gun, and that Hart had panicked and fired his weapon at Dixon. Defense counsel presented no evidence, but instead focused on impeaching Patterson's testimony.

At the close of the trial, the court instructed the jury on the law of homicide.[1] The court directed the jury to consider the various forms of homicide in what the Commonwealth describes as a "logical progression sequence". This progression charge was as follows:

1. "A person is guilty of criminal homicide if he intentionally, knowingly, recklessly or negligently causes the death of another human being." 18 Pa.Cons.Stat.Ann. § 2501 (Purdon 1983). Homicide includes the crimes of murder in the first, second, and third degree, voluntary manslaughter, and involuntary manslaughter. 18 Pa.Cons. Stat.Ann. §§ 2502, 2503, 2504. The trial court instructed the jury on murder and voluntary manslaughter. The court, however, denied a defense request for a charge on involuntary manslaughter.

You also will take with you a verdict sheet. Now the verdict sheet is self-explanatory. It has "Verdict Sheet" up here. It has my name, the names of the attorneys and the Commonwealth versus Andre Hart. But you will notice here it's listed murder and besides [sic] murder is first degree, second degree and third degree. And below that is voluntary manslaughter and the charges of robbery and criminal conspiracy.

Now it's up to you to decide what order you want to proceed on. When you're in that jury room you decide things for yourself. However, if you find the Defendant guilty of murder of the first degree, it will not then be necessary to consider second degree, third degree or voluntary manslaughter.

If you find the Defendant guilty ... of first degree murder, the chairperson will then write under verdict guilty or not guilty. If you find him not guilty of all, either murder or manslaughter, you will then write not guilty under ... all of the homicide charges. If you find him guilty of first degree murder, it will not be necessary to consider any of the other charges.

If you find him not guilty of first degree but find him guilty of second degree, then the chairperson should write beside that charge guilty. It will not be necessary to consider third degree and manslaughter.

If you find him not guilty of first, second, and third degree, then you will consider voluntary manslaughter and put beside the verdict whatever the verdict is.

*You will only consider voluntary manslaughter if you are satisfied the Commonwealth has not proven the Defendant guilty of any degrees of murder.*

N.T. at 3.44–3.46 (emphasis added).

Trial counsel did not object to this instruction. After deliberating, the jury found Hart guilty of murder in the third degree. The jury also found Hart guilty of robbery and criminal conspiracy. Counsel successfully argued in post-trial motions that the robbery and criminal conspiracy charges were barred by the statute of limitations. On

March 25, 1985, the court arrested judgment on the robbery and criminal conspiracy charges, and sentenced Hart for the murder charge to a term of ten to twenty years imprisonment.

Hart obtained new counsel and filed a timely notice of appeal from his judgment of sentence for murder. On appeal, counsel did not address the trial court's progression charge. Appellate counsel instead argued that trial counsel was ineffective for failing to request a point for charge on the distinction between accomplice liability for murder and liability as an accessory after the fact. A panel of this court affirmed Hart's judgment of sentence in an unpublished decision.

On May 29, 1987, Hart filed a pro se petition under the Post Conviction Hearing Act (PCHA).[2] A third counsel was appointed to handle the PCHA action, and this counsel filed an amended petition on September 28, 1987. The amended petition specifically alleged that both trial counsel and counsel on direct appeal were ineffective for failing to argue that the trial court's progression charge was erroneous. On September 26, 1988, the PCHA court entered an order denying the amended petition without a hearing. Hart filed a timely appeal to this court of the order denying PCHA relief. After careful consideration, we affirm.

## II.

Initially, we must consider whether the specific claim of ineffective assistance of counsel that appellant now advances was properly before the PCHA court. In order to be eligible for PCHA relief, a defendant must prove that the error which resulted in his conviction and sentence has not been either finally litigated or waived. 42 Pa.Cons.Stat.

---

2. 42 Pa.Cons.Stat.Ann. §§ 9541–9551 (Purdon 1982). The Post Conviction Hearing Act was modified in part, repealed in part and renamed the Post Conviction Relief Act by Act of April 13, 1988, No. 47, §§ 3–4, 1988 Pa.Legis.Srv. 227, 229–232. See 42 Pa.Cons.Stat.Ann. §§ 9541–9546 (Purdon Supp.1989). Appellant's petition for relief was filed before the effective date of the new act and is controlled by the prior law.

Ann. § 9543(4). A claim has been finally litigated when, inter alia, the Superior Court has ruled on the merits of the issue and the petitioner has knowingly and understandingly failed to avail himself of further appeals. 42 Pa.Cons.Stat. Ann. § 9544(a)(2). The PCHA court found that appellant's claim had been finally litigated on direct appeal from his judgment of sentence. We do not agree.

■ On direct appeal, Hart argued that counsel was ineffective for not requesting a charge clarifying the concept of accomplice liability. A Superior Court panel rejected this argument but without undertaking a general review of either counsel's representation or the trial court's instructions to the jury. Hart now challenges a different aspect of counsel's performance, i.e., counsel's failure to object to the trial court's progression charge. This allegation was never considered on direct appeal and thus cannot be deemed to be "finally litigated" so as to preclude PCHA review.

In dismissing appellant's PCHA petition, the PCHA court relied on the principle that a petitioner may not relitigate under a new legal theory an issue that was decided against her in a prior proceeding. *See Commonwealth v. Curtin,* 365 Pa.Super. 424, 529 A.2d 1130 (1987) (collecting cases). Under the PCHA court's analysis, whether counsel was in all respects an effective advocate is a single issue, and each challenge to an aspect of counsel's performance is a variation in theory. This approach treats the concept of "issue" too narrowly, and the concept of "theory" too broadly. As we noted in *Commonwealth v. Sawyer,* 355 Pa.Super. 115, 512 A.2d 1238 (1986), "A petitioner alleging ineffectiveness of counsel is not barred from seeking relief under the [Post Conviction Hearing] Act merely because he has previously unsuccessfully asserted an ineffectiveness claim, so long as the specific allegation of ineffectiveness has not previously been litigated." *Id.,* 355 Pa.Superior Ct. at 121, 512 A.2d at 1241. *See also Commonwealth v. Ramsey,* 300 Pa.Super. 515, 517 n. 2, 446 A.2d 974, 975 n. 2 (1982). A claim that counsel was ineffective for failing to object to one portion

of a jury charge is clearly distinct from a claim that counsel was ineffective for failing to a request a point for charge on a different subject matter, and we find that each claim constitutes a separate issue. Accordingly, the matter before the PCHA court was not finally litigated.

■ We further find that appellant did not waive his present ineffectiveness claim. Appellant specifically argued with the assistance of his PCHA counsel that counsel on direct appeal was ineffective for not asserting that trial counsel was ineffective for not objecting to the progression charge. For many years, courts have declined to apply the waiver doctrine where a defendant has alleged the serial ineffectiveness of all prior counsel. *See, e.g., Commonwealth v. Watlington,* 491 Pa. 241, 420 A.2d 431 (1980); *Commonwealth v. Johnson,* 347 Pa.Super. 93, 500 A.2d 173 (1985). We acknowledge that in *Commonwealth v. Lawson,* 519 Pa. 504, 549 A.2d 107 (1988), the Pennsylvania Supreme Court departed from this practice in order to discourage the filing of repetitive PCHA petitions. Under *Lawson,* "a second or any subsequent post-conviction request for relief will not be entertained unless a strong *prima facie* showing is offered to demonstrate a miscarriage of justice may have occurred." *Id.,* 519 Pa. at 513, 549 A.2d at 112. *Lawson,* however, did not alter the law of waiver as applied to a defendant's initial PCHA petition. Since appellant has never filed a previous petition, he need not establish a "miscarriage of justice" in order to press his ineffectiveness claim.

We conclude that appellant's issue was neither finally litigated nor waived. We must therefore proceed to determine whether prior counsel were in fact ineffective for not challenging the progression charge.

### III.

There are three elements to a valid claim of ineffective assistance. We inquire first whether the underlying claim is of arguable merit; that is whether the disputed

action or omission of counsel was of questionable legal soundness. If so, we ask whether counsel had any reasonable basis for the questionable action or omission which was designed to effectuate his client's interest. If he did, our inquiry ends. If not, the appellant will be granted relief if he also demonstrates that counsel's improper course of conduct worked to his prejudice, i.e., had an adverse effect upon the outcome of the proceedings.

*Commonwealth v. Davis*, 518 Pa. 77, 83, 541 A.2d 315, 318 (1988).

Bearing this standard in mind, we find that appellant has failed to establish that counsel provided ineffective representation. A close review of appellant's brief reveals three arguments in support of the view that counsel should have challenged the progression charge. We find each of these arguments unpersuasive.

## A.

Appellant broadly asserts that by delivering the progression charge, the trial court invaded the province of the jury. He contends that a trial judge exceeds his proper function if he directs the jury to consider the offenses of which the defendant stands accused in any particular order. "To permit the trial jurist to order the deliberations of a jury in such a fashion makes the judge a 13th juror. Such structuring of jury deliberations is just not permissible." Appellant's Brief at 13. For the reasons that follow, we cannot agree.

While the jury must serve as the sole finder of fact, the trial court has a duty to frame legal issues for the jury and instruct the jury on the applicable law. *See Commonwealth v. Leonhard*, 336 Pa.Super. 90, 95, 485 A.2d 444 (1984). One method by which the court may choose to clarify issues for the jury is to direct the jury to consider at the outset the most serious form of the offense with which the defendant has been charged. If the jury were first to

consider a less serious form of the offense, it might return a verdict of guilty of the lesser charge without determining whether the Commonwealth also proved the additional facts necessary to establish the more serious crime. By directing the jury to begin its deliberations with the greater offense, the judge can help to ensure that the jury will bring its independent judgment to bear on all important aspects of the Commonwealth's case. Thus, as a general rule, a progression charge is proper where the defendant is charged with different forms or degrees of the same crime. *Cf. Pharr v. Israel,* 629 F.2d 1278 (7th Cir.1980), *cert. denied,* 449 U.S. 1088, 101 S.Ct. 880, 66 L.Ed.2d 815 (1981) (charge that jury should consider lesser degrees of homicide only if defendant acquitted of first degree murder did not violate right to jury trial); *Commonwealth v. Sanders,* 380 Pa.Super. 78, 95–97, 551 A.2d 239, 248 (1988) (charge that jury should consider second degree robbery charge only if defendant was acquitted of first degree robbery did not invade province of jury).

We note, however, that, under some special circumstances, a progression charge may create a risk of an unjust conviction. Consider the following hypothetical. A defendant is charged with a first degree offense that consists of elements a, b, c and a second degree offense that consists of a, b, c plus an additional factor "d". This "d" is a mitigating factor that reduces the offense from a crime of the first degree to a crime of the second degree.[3] If the

3. For a concrete example, consider the offense of simple assault. Section 2701 of the Crimes Code provides:

(a) Offense defined—A person is guilty of assault if he:

(1) attempts to cause or intentionally, knowingly, or recklessly causes bodily injury to another;

.    .    .    .    .

(b) Grading—Simple assault is a misdemeanor of the second degree unless committed in a fight or scuffle entered into by mutual consent, in which case it is a misdemeanor of the third degree

The existence of a fight entered into by mutual consent is a mitigating factor that the jury may find reduces simple assault from a more serious second degree misdemeanor offense to a less serious third degree misdemeanor offense. *See generally Commonwealth v. Fleck,* 372 Pa.Super. 546, 539 A.2d 1331 (1988).

jury is told to consider the second degree offense only if they acquit of the first degree offense, the jury may fail to consider whether mitigating factor "d" is present. Thus, the jury might simply find that elements a, b, c are present and convict of the first degree offense, although only a conviction for the second degree offense would be appropriate.

With this in mind, we consider progression charges as applied to the crimes of murder and voluntary manslaughter. First, second, and third degree murder, as well as voluntary manslaughter, are all forms of homicide. 18 Pa.Cons.Stat.Ann. §§ 2501–2503; *see* n. 1, *supra.* A homicide may be regarded as voluntary manslaughter rather than murder if: 1) the defendant acted under a sudden and intense passion resulting from serious provocation; or 2) the defendant believed that the circumstances were such as would justify the killing but this belief was unreasonable. 18 Pa.Cons.Stat.Ann. § 2503. In a sense, then, "heat of passion" and "unreasonable belief" are mitigating factors that reduce murder to voluntary manslaughter. One might therefore reason that a progression charge improperly prevents the jury from considering either "heat of passion" or "unreasonable belief", and creates a risk of an unjust conviction for murder.

Upon closer analysis, however, we find that a progression charge in a homicide case is not improper. The true distinguishing feature between murder and manslaughter is the absence of malice. *Commonwealth v. Young*, 494 Pa. 224, 431 A.2d 230 (1981). Malice is a necessary element of every degree of murder.[4] Malice refers to various culpable mental states; it encompasses the intent to kill or inflict great bodily harm, as well as wickedness of disposition, hardness

4. Murder is the unlawful killing of a human being with malice aforethought, express or implied. 17 Pennsylvania Law Encyclopedia *Homicide* § 11 (1986). Murder of the first degree is murder committed by an intentional killing. Murder of the second degree is murder committed while the defendant was engaged as a principal or accomplice in the perpetration of a felony. Murder of the third degree encompasses all other kinds of murder. 18 Pa.Cons.Stat.Ann. § 2502.

of heart, and reckless disregard for social duty. *See* 17 Pennsylvania Law Encyclopedia *Homicide* § 13 (1986). The significance of "heat of passion" and "unreasonable belief" are that as a matter of law they are deemed to rebut the malice element of murder.[5] "Heat of passion" and "unreasonable belief" are not additional elements of the crime of voluntary manslaughter. *Commonwealth v. Fisher,* 342 Pa.Super. 533, 493 A.2d 719 (1985). Rather, the question of whether the defendant acted under "heat of passion" or "unreasonable belief" is implicit in the question of whether the malice element necessary for a murder conviction has been established. Accordingly, the jury is not precluded from considering these mitigating factors by an instruction that the defendant should not be convicted of voluntary manslaughter unless he is first acquitted of murder.

We caution that a trial judge should carefully instruct the jury regarding factors that may be capable of rebutting an inference of malice. Whenever the trial judge gives a progression charge in a homicide case, he should accompany the charge with an instruction that makes clear to the jurors that they must take any evidence of "heat of passion" or "unreasonable belief" into account when initially determining whether the Commonwealth has established the malice element of murder beyond a reasonable doubt.[6]

**5.** It is unclear, however, whether "heat of passion" or "unreasonable belief" could ever reduce second degree murder, i.e. felony murder, to voluntary manslaughter since the malice element of second degree murder is presumed from the fact that the defendant participated in an underlying felony. *See Commonwealth v. Davis,* 449 Pa. 468, 475, 297 A.2d 817, 821–22 (1972), *cert. denied,* 414 U.S. 836, 94 S.Ct. 183, 38 L.Ed.2d 72 (1973) (Opinion in Support of Affirmance). We need not decide this issue.

**6.** In this regard, we note that the Pennsylvania Supreme Court Committee For Proposed Standard Jury Instructions has recommended that the following charge be given in cases in which both murder and voluntary manslaughter are at issue:

(1) As my earlier definition of malice indicates, there can be no malice when certain reducing circumstances are present. When those circumstances are present a killing may be voluntary manslaughter but never murder. This is true when a defendant kills in heat of passion following a serious provocation or kills under an unreasonable mistaken belief in justifying circumstances.

Without proper instructions regarding malice, the jury might misinterpret the progression charge as mandating a conviction for murder despite the presence of mitigating evidence establishing "heat of passion" or "unreasonable belief".

■ In the case sub judice, however, appellant has never challenged either the court's charge insofar as it relates to malice or his counsel's performance in failing to request clarifying instructions on malice. Moreover, appellant has failed to identify any testimony or other evidence of record in this case that would have reasonably supported a finding of "heat of passion" or "unreasonable belief". Accordingly, we cannot say that the judge's progression charge interfered with the jury's ability to determine whether mitigating factors were present that would have rebutted an inference of malice and reduced appellant's crime from murder to voluntary manslaughter. Under these circumstances, we conclude that the judge's progression charge in no way invaded the province of the jury. Therefore, appellant's claim is without arguable merit.

### B.

■ Appellant also asserts that within the context of a murder trial, a progression charge impermissibly interferes with the trial jury's mercy dispensing powers. In this regard, appellant relies on a series of Pennsylvania Supreme Court decisions including *Commonwealth v. Jones,* 457 Pa. 563, 319 A.2d 142 (1974), *cert. denied,* 419 U.S. 1000, 95 S.Ct. 316, 42 L.Ed.2d 274 (1974), *Commonwealth v. Covil,* 474 Pa. 375, 378 A.2d 841 (1977), and *Commonwealth v. Manning,* 477 Pa. 495, 384 A.2d 1197 (1978).

(2) Accordingly, you can find malice only if you are satisfied beyond a reasonable doubt that the defendant was *not* acting [under a sudden and intense passion resulting from a serious provocation by (the victim) (another person whom the defendant was trying to kill when he negligently or accidentally killed the victim) [or] [under an unreasonable belief that the circumstances were such that, if they existed, would have justified the killing].
*Pennsylvania Standard Suggested Jury Instructions (Criminal)* § 15.2503A (1979).

*Jones* and its progeny stand for the proposition that every defendant who stands accused of murder has a right to a voluntary manslaughter instruction upon request. The rationale behind these decisions is that a jury must be permitted to exercise clemency by convicting a defendant of voluntary manslaughter instead of murder, even where there is no evidence to support the conclusion that the defendant acted under "heat of passion" or an "unreasonable belief". Appellant complains that a progression charge works at cross-purposes with *Jones* by "lock[ing] the jury into a verdict based on the evidence before it." Appellant's Brief at 3. This is not a basis for affording relief.

In *Commonwealth v. Carter*, 502 Pa. 433, 466 A.2d 1328 (1983) and *Commonwealth v. Frey*, 504 Pa. 428, 475 A.2d 700 (1984), *cert. denied*, 469 U.S. 963, 105 S.Ct. 360, 83 L.Ed.2d 296 (1984), the Supreme Court repudiated the earlier view that a defendant has an automatic right to a voluntary manslaughter instruction. Under current Pennsylvania law, a defendant is not entitled to a voluntary manslaughter charge unless the evidence introduced at trial would logically support a voluntary manslaughter verdict. *Commonwealth v. Toledo*, 365 Pa.Super. 224, 529 A.2d 480 (1987). "In *no* case will a defendant be entitled to a charge which invites the jury to return its verdict based upon mercy rather than fact." *Commonwealth v. Grove*, 363 Pa.Super. 328, 345, 526 A.2d 369, 378 (1987). Similarly, counsel may not successfully object to a charge on the sole ground that it encourages the jury to return a verdict of guilty or not guilty that is based upon fact rather than mercy. Accordingly, counsel may not be found ineffective for not objecting to the progression charge under this theory.

## C.

Finally, appellant contends that even if progression charges in homicide cases are not per se improper, trial counsel should have requested a modification of the charge

that the trial court actually delivered. Under the trial court's charge, the jurors could not consider voluntary manslaughter unless they unanimously agreed that the defendant was not guilty of murder. Appellant alleges that counsel should have at least suggested that the judge permit the jurors to consider voluntary manslaughter if they were unable to agree on a verdict as to murder. In support of this argument, he cites *United States v. Tsanas*, 572 F.2d 340 (CA 2nd Cir.1978). His reliance on *Tsanas* is misplaced.

In *Tsanas*, the federal district court instructed the jury that they must unanimously find the defendant not guilty of tax evasion before proceeding to determining if he were guilty of a less serious tax-related crime. The defendant was then convicted of tax evasion. On appeal, Judge Friendly perceptively analyzed the advantages and disadvantages for both the prosecution and the defense of requiring jury unanimity on the greater offense.

The instruction given here has the merit, from the Government's standpoint, of tending to avoid the danger that the jury will not adequately discharge its duties with respect to the greater offense, and instead will move too quickly to the lesser one. From the defendant's standpoint, it may prevent any conviction at all; a jury unable either to convict or acquit on the greater charge will not be able to reach a lesser charge on which it might have been able to agree. But it entails disadvantages to both sides as well: By insisting on unanimity with respect to acquittal on the greater charge before the jury can move to the lesser, it may prevent the Government from obtaining a conviction on the lesser charge that would otherwise have been forthcoming and thus require the expense of a retrial. It also presents dangers to the defendant. If the jury is heavily for conviction on the greater offense, dissenters favoring the lesser may throw in the sponge rather than cause a mistrial that would leave the defendant with no conviction at all, although the jury might

well have reached sincere and unanimous agreement with respect to the lesser charge.

An instruction permitting the jury to move on to the lesser offense if after all reasonable efforts it is unable to reach a verdict on the greater likewise has advantages and disadvantages to both sides—the mirror image of those associated with the charge actually given here. It facilitates the Government's chances of getting a conviction for something, although at the risk of not getting the one that it prefers. And it relieves the defendant of being convicted on the greater charge just because the jury wishes to avoid a mistrial, but at the risk of a conviction on the lesser charge which might not have occurred if the jury, by being unable to agree to acquit on the greater, had never been able to reach the lesser.

*Tsanas,* 572 F.2d at 346 (footnote omitted).

In light of this analysis, Judge Friendly reached the following conclusions:

With the opposing considerations thus balanced, we cannot say that either form of instruction is wrong as a matter of law. The court may give the one that it prefers if the defendant expresses no choice. If he does, the court should give the form of the instruction which the defendant seasonably elects. It is his liberty that is at stake, and the worst that can happen to the Government under the less rigorous instruction is his readier conviction for a lesser rather than a greater crime.

*Id.* at 346.

Although we are not bound by *Tsanas,* we shall assume for present purposes that upon request a trial court must instruct the jurors to consider a lesser offense if they cannot reach a verdict on the greater offense. It does not follow that counsel is ineffective for failing to request this instruction. As Judge Friendly's commentary makes clear, defense counsel would have valid reasons for preferring the standard version of the progression charge to a modified version that encourages convictions on lesser offenses. In the instant case, the charge delivered by the court would

have worked to the defendant's advantage if the jury had deadlocked on the murder verdict and thereby forced a mistrial. The decision not to elect an alternative jury charge was a reasonable trial strategy.

"[C]ounsel cannot be determined to be ineffective unless a court concludes that viable alternatives existing but not chosen offered a potential for success substantially greater than the tactics counsel actually utilized." *Commonwealth v. Gabrielson*, 370 Pa.Super. 271, 280, 536 A.2d 401, 405 (1988). Since we cannot say that a modified jury charge would have been more likely to result in a finding of not guilty of murder, appellant was not denied the effective assistance of counsel.

In conclusion, we find that all of appellant's claims of ineffective assistance of counsel are clearly without merit. Appellant has failed to allege facts that if proven would entitle him to relief under the Post Conviction Hearing Act. Accordingly, we shall not reverse the order of the trial court denying appellant's petition for collateral relief without a hearing. *See* 42 Pa.Cons.Stat.Ann. § 9549.

Order affirmed.