668 A.2d 1167

COMMONWEALTH of Pennsylvania

v.

Carroll Bradford SNEERINGER, Appellant.

Superior Court of Pennsylvania.

Argued Oct. 24, 1995.

Filed Dec. 29, 1995.

Allen C. Welch, Lemoyne, for appellant.

Martha J. Duvall, Assistant District Attorney, Gettysburg, for Commonwealth, appellee.

Before CAVANAUGH, BECK and HESTER, JJ.

CAVANAUGH, Judge:

This is an appeal from a judgment of sentence of life imprisonment, imposed following appellant Carroll Sneeringer's conviction of first degree murder. After careful review, we affirm.

For approximately two years appellant and the victim, Christie Paul, resided together with their child and another child from a prior relationship of the victim. During this period the victim worked two jobs and was the primary caregiver for the children. Appellant had an erratic work history, which was the cause of tension between him and the

victim. On August 14, 1992 appellant lost his job. The victim, after learning this fact, told several friends and family members that she was going to throw appellant out and end their relationship.

In the evening of August 18th, appellant, the victim, and the children were at home. The victim had several telephone conversations with friends. This was the last known contact she had before her death.

On August 20th, the victim's disappearance was reported to the police at the insistence of one of her friends. The police interviewed appellant, who told them that the victim left the apartment at 9:30 P.M. on August 18th in her car. He also told them that he awoke at 3:00 A.M. and that the car and the only set of keys had been returned, but that the victim was not there. Appellant also related to friends that he and the victim had a big fight.

On August 21st, appellant consented to a search of the victim's car, which revealed blood stains in the trunk. On August 22nd, the police discovered blood in the stairwell, kitchen and bedroom of the couple's home, and at the spot where the victim normally parked her car.

In the meantime, several persons had reported seeing a car, which matched the description of the victim's car, being driven through town on the morning of August 19th with blood smeared on the trunk and rear bumper. Another person also reported seeing the victim's car parked earlier that morning at a remote location eight miles east of Gettysburg. Police subsequently found numerous blood stained items near this location. One of these items was a metal softball bat inscribed with the victim's name. The victim's body was discovered several months later in another location.

At trial, the Commonwealth presented expert medical testimony that the victim's death was caused by a blunt trauma to the right and back side of the head which fractured the skull; and that the injury was consistent with being struck with considerable force by an aluminum bat. Expert testimony was also presented that the blood found in the car, the

apartment, and on the items at the remote location were consistent with the victim's blood. Following deliberation, the jury returned a verdict of guilty of first degree murder. The court subsequently imposed the mandatory sentence of life imprisonment. Appellant then filed this appeal.

 Appellant first contends that trial counsel was ineffective for not objecting to the trial court's progression charge as to the degrees of homicide, because the charge was erroneously given, it confused the jury, and it compelled the jury to return a verdict of guilty of first degree murder.

[Claims of] ineffectiveness [of counsel] ... are subject to a three-part analysis. First, it must be demonstrated that the underlying claim is of arguable merit. Next, it must be determined whether counsel's choice of action had some reasonable basis designed to effectuate his or her client's interests. Finally, a showing must be made of how counsel's choice of action prejudiced the client. Prejudice in the context of a claim of ineffective assistance of counsel is determined by an evaluation of whether "but for the arguably ineffective act or omission there is a reasonable probability that the result would have been different." The law presumes that counsel was effective, so that the burden of establishing ineffectiveness rests squarely upon the defendant.

*Commonwealth v. Donahue,* 428 Pa.Super. 259, 282, 630 A.2d 1238, 1249–50 (1993) (citations omitted).

 As a general rule, this Court has held that a progression charge is proper where a defendant is charged with different forms or degrees of the same crime. *Commonwealth v. Hart,* 388 Pa.Super. 484, 493, 565 A.2d 1212, 1216 (1989). *See also Commonwealth v. Loach,* 421 Pa.Super. 527, 618 A.2d 463 (1992) (en banc). With regard to a progression charge in a homicide case, it is necessary for the trial court to carefully instruct the jury to consider factors which may rebut evidence either of a specific intent to kill or of malice. *Id.*

Here, the trial court did not initially instruct the jury using a progression charge as to the degrees of homicide. After the

jury began its deliberations, it questioned the trial court whether it had to complete the entire verdict slip. The trial court, after consultation with the Commonwealth and defense counsel, instructed the jury as follows:

I think perhaps the easiest way to do this is as follows: without suggesting in any manner that you should enter a guilty verdict on any count, but if you believe the Commonwealth has proven his guilt beyond a reasonable doubt as to at least one of the counts and maybe more, that you should enter a guilty verdict on the highest level of guilt, highest being first, then third, then voluntary. Pick the highest level, enter your verdict on that one if it is guilty and then come on back in. And the reason why I say this is if you find him guilty of first degree, that would include all of the elements for third but not necessarily for voluntary because there are some things about voluntary which aren't the same as in the murder. You could find him, if you were to find him guilty of voluntary, for example, then the murder wouldn't be present because there wasn't the malice perhaps or it hasn't been disproven about the passion and the provocation that I talked to you about. So rather than trying to figure out yourself if one applies and the other two don't, the easiest way to do this is just if you find guilt at all, just pick the highest level that you feel has been proven beyond a reasonable doubt and then just stop.

Appellant contends that this instruction was erroneous and confused the jury, because the trial court failed to instruct the jury to consider evidence which would rebut a finding of malice. When reviewing jury instructions, error will not be found based upon isolated excerpts, but rather, the charge as a whole is considered. *Commonwealth v. Shoup*, 423 Pa.Super. 12, 22, 620 A.2d 15, 20 (1993). "The key inquiry is whether the instruction on a particular issue adequately, accurately and clearly presents the law to the jury, and is sufficient to guide the jury in its deliberations." *Id.*

After reviewing the trial court's charge, we conclude that the court correctly instructed the jury with regard to its

deliberations on the charges of first degree murder, third degree murder, and voluntary manslaughter. At issue is whether the trial court informed the jury that mitigating factors which may be present, are relevant to first and third degree murder, because they may negate an inference of malice. Here, the trial court specifically instructed the jury that a finding that appellant was acting under a sudden and intense passion resulting from serious provocation could negate a finding of malice. Thus, when the jury returned to its deliberations, it was aware of what mitigating circumstances to consider, and that these factors had to be considered in determining guilt or innocence as to each of the grades of homicide charged—first degree murder, third degree murder, and voluntary manslaughter. As such, appellant's claim of ineffectiveness is meritless. *See Hart, supra* (whether a defendant acted under "heat of passion" or "unreasonable belief" is implicit in the question of whether the malice element necessary for a murder conviction has been established).

■ Appellant next contends that the trial court erred in admitting several hearsay statements attributed to the victim, which did not comport with the state of mind exception to the hearsay rule, and whose probative value was outweighed by their prejudicial impact. The statements found objectionable to appellant concerned the breakdown of the victim's and appellant's relationship, and the victim's expressed intent to get appellant out of her life. The trial court ruled that these statements were relevant to show motive and that they were admissible under the state of mind exception. The trial court also instructed the jury that these statements were only being admitted for this limited purpose.

■ Evidence concerning a relationship between a defendant and a victim may be relevant and admissible to prove ill will, motive, or malice. *Commonwealth v. Myers*, 530 Pa. 396, 399–400, 609 A.2d 162, 164 (1992). Such evidence, however, is nonetheless subject to general evidentiary rules governing competency and relevancy. *Id.* While the statements elicited by the Commonwealth are hearsay, they are admissi-

ble under the state of mind exception to the hearsay rule. *See Commonwealth v. Henderson*, 324 Pa.Super. 538, 472 A.2d 211 (1984). The fact that the victim intended to end her relationship with appellant made it more probable that she did end the relationship, than if she had no such intention. Moreover, if the victim did end her relationship with appellant, then such a factor is probative of appellant's motive. The mere fact that the victim expressed an intent to end her relationship with appellant does not establish that she did in fact do so. It does, however, allow the jury to infer appellant's motive from such a revelation, and is properly considered in resolving the question of whether appellant killed the victim. As such, the objectionable remarks were both competent and relevant, and they were properly admitted at trial.[1]

Appellant next contends that the trial court erred in refusing to grant a mistrial after a Commonwealth witness testified that the victim had told her that appellant used illegal drugs, because such testimony was highly prejudicial evidence of prior criminal conduct. The testimony which prompted defense counsel's objection occurred during direct examination of a Commonwealth witness:

1. Appellant contends that, although the objectionable statements in the case at bar are reflective of the victim's state of mind, they are, nonetheless, inadmissible because the declarations only become relevant when they are considered for the truth of the matter asserted. In support of this proposition, appellant relies on *Commonwealth v. Thornton*, 494 Pa. 260, 431 A.2d 248 (1981).

In *Thornton*, a police officer testified that the victim had said that he was carrying a gun because the defendant was after him. On appeal, the supreme court indicated that this testimony tended to establish that the victim was fearful of the defendant. The court concluded, however, that the victim's state of mind was not at issue in the case, but rather, that it was the defendant's state of mind which was material to establish the degree of guilt, if any, on the charge of criminal homicide. The court further reasoned that only when the declaration was considered for its truth, that the defendant was after the victim, did it become relevant to the defendant's intent to kill the victim.

*Thornton* is factually distinguishable from the case at bar. In *Thornton*, the victim's state of mind was not probative and material of defendant's intent to kill. In the case at bar, the declarations of the victim were probative of appellant's possible motive. Thus, the objectionable statements were both probative and material of an intent to kill on the part of appellant.

Q. What did you know from Christie about her personal life say in the year prior to August of 1992?

A. She was not very happy at home. She said her boyfriend that lived with her took up a lot of her time and she didn't have a lot of time to spend with her children. He had to go everywhere they went. She said they were fighting because he was using marijuana.

The trial court overruled defense counsel's objection and instructed the jury that this testimony was relevant to establish the victim's state of mind and the status of her and appellant's relationship.

> Evidence of other crimes is generally inadmissible. Such evidence may, however, be admitted in certain circumstances where the evidence is relevant for some other legitimate purpose and not merely to prejudice the defendant by showing him or her to be a person of bad character. *Commonwealth v. Hughes*, 521 Pa. 423, 555 A.2d 1264 (1989). A defendant's other criminal acts may be introduced to prove motive; intent; absence of mistake or accident; a common scheme, plan, or design embracing the commission of two or more crimes so related to each other that proof of one tends to prove the others; or to establish the identity of the person on trial as the person who committed the crime in issue. *Commonwealth v. Billa*, 521 Pa. 168, 555 A.2d 835 (1989); *Commonwealth v. Banks*, 513 Pa. 318, 521 A.2d 1 (1987).

*Commonwealth v. Rogers*, 419 Pa.Super. 122, 128, 615 A.2d 55, 58 (1992). Furthermore, a new trial will be granted only when the reference to the prior criminal activity is prejudicial to the defendant, with prejudice resulting "where the testimony conveys to the jury, either expressly or by reasonable implication, the fact of a prior criminal offense." *Commonwealth v. Wallace*, 522 Pa. 297, 308, 561 A.2d 719, 724 (1989), *quoting, Commonwealth v. Morris*, 513 Pa. 169, 519 A.2d 374 (1986).

 Here, the reference to appellant's drug use does not fall within any of the enumerated exceptions to rule prohibiting the admission of evidence of other crimes. Fur-

thermore, this testimony was intentionally elicited by the Commonwealth, as the record reveals that the Commonwealth informed the trial court, prior to questioning the witness, that it intended to elicit testimony that the parties relationship was deteriorating because of appellant's drug use. In view of the witness's direct reference to appellant's involvement in criminal activity, we conclude that appellant was prejudiced by the admission of this evidence. A new trial is not warranted in this case, however, as we find this error to be harmless. An error is harmless where the properly admitted evidence of guilt is so overwhelming, and the prejudicial effect of the error is so insignificant by comparison, that it is clear beyond a reasonable doubt that the error could not have contributed to the verdict. *Commonwealth v. Sanchez*, 407 Pa.Super. 234, 240, 595 A.2d 617, 620 (1991). Here, no relief is warranted as the prejudice to appellant was insignificant in view of the overwhelming evidence of his guilt, and we are convinced beyond a reasonable doubt that the error could not have contributed to the verdict.

In the fourth issue, appellant contends that the trial court erred in refusing to grant a mistrial after a Commonwealth witness testified that appellant had refused to take a polygraph test. On direct examination, the witness testified as follows:

Q. How long was Brad gone, do you recall? Did he come back at some point?

A. Yeah, he did. I am not sure how long.

Q. Well, was it hours or less?

A. 20 minutes, half hour, maybe, I don't know.

Q. Then what happened?

A. He seemed really mad. I asked what was wrong and he said that they wanted him to take a polygraph test and that he refused it. I said well, why. If they had suspicions about me, that would be the first thing I would want to do but he just said he didn't want to take this test.

Defense counsel moved for a mistrial. The trial court denied this motion and gave a cautionary instruction:

THE COURT:

Ladies and gentlemen, Mr. Bere made reference during his testimony to something which requires me to talk to you about at this time. As with any other witness you must judge the credibility of Mr. Bere and you have to determine whether what he told you was true or not true as it was related. The one reference that he made if you find that this was accurate and credible was that the Defendant made some statement about being asked to take a polygraph and that he refused to take that. The sole purpose for which that reference may be admitted in this case, if anything, is just to show state of mind of Mr. Sneeringer at about the time.

It's very important that you understand that polygraph examinations have not reached the level of scientific acceptance that the Courts allow results of polygraph tests to be admitted into evidence and that no one is ever required, even if they're asked, to take a polygraph examination.

I indicated to you during the orientation that the burden is always on the Commonwealth to prove the Defendant's guilt beyond a reasonable doubt. A Defendant is presumed to be innocent. A Defendant need not prove anything at all and has a constitutional and absolute right to remain silent and that if Mr. Sneeringer chooses not to present a defense in this case or as specifically relates to the comment made here, declined any opportunity to take a polygraph examination, you must as a juror not allow that to influence in any way your decision on whether he is or is not guilty. In other words, it would be improper to infer from his failure to take that exam that that is any evidence that he is guilty or had anything to hide. Just the same as if he were to decide not to present a defense, you could not infer from that that he is guilty or has anything to hide.

Appellant now contends that the court's instruction was insufficient because it allowed the jury to consider his refusal with regard to his state of mind. He maintains that any reference to his refusal to take a polygraph is prejudicial and requires a new trial.

> [T]he results of lie detector tests are inadmissible at trial due to their unreliable nature. Therefore, any reference to a lie detector test which raises an inference concerning the guilt or innocence of a defendant is inadmissible. *Commonwealth v. Camm*, 443 Pa. 253, 269, 277 A.2d 325, 333 (1971). The mere mention of a lie detector test, however, does not constitute reversible error.

*Commonwealth v. Stanley*, 427 Pa.Super. 422, 426, 629 A.2d 940, 942 (1993). Here, the Commonwealth did not intentionally elicit the objectionable response from the witness, the test was not administered, and the trial court instructed the jury that it must not let the witness's reference to the test influence their determination of appellant's guilt or innocence. Additionally, the court's reference that the testimony may be relevant to show state of mind does not require a new trial. The response of the witness did not reflect upon the results of a polygraph, which as a matter of law are inadmissible. Moreover, the court's instruction, read in its entirety, was sufficient to communicate to the jury that they could draw no inference, adverse or favorable, from the witness's indication that appellant refused to take a polygraph test. *Cf. Commonwealth v. Miller*, 497 Pa. 257, 439 A.2d 1167 (1982) (new trial not required where witness indicated that Commonwealth wanted to give him a lie detector test where: the Commonwealth did not elicit this information, the result of the test was not mentioned, it was unclear whether a test was given, and the court instructed the jury to disregard the testimony).[2]

▮▮▮▮▮ Next, appellant argues that the trial court erred in denying appellant's motion for a change of venue or venire

---

**2.** We note that two evidentiary problems arose in this case which are attributable to the fact that responses were made to open-ended questions which invited a narrative style of response from the witness. This practice is parlous since it places on the witness the burden of separating the admissible from the inadmissible and should be avoided.

based upon the inherently prejudicial nature of the media coverage in the case. In a case where prejudicial publicity occurs, the trial court may exercise its discretion and may continue the case, change the venue, resort to extensive voir dire, or use the costly and inconvenient device of jury sequestration. *Commonwealth v. Chambers*, 528 Pa. 558, 570, 599 A.2d 630, 636 (1991). Moreover, where a defendant claims that he has been denied a fair trial because of prejudicial pretrial publicity, he must demonstrate actual prejudice in the impanelling of the jury. *Id.* In either case, an appellant bears a heavy burden in order to secure a new trial.

After reviewing the record in this case, we find that it is insufficient to address appellant's claims. The record contains neither the numerous newspaper articles which appellant claims prejudiced him, nor does it contain a transcript of the voir dire of the prospective jurors. It is the responsibility of the appellant to offer a complete record for purposes of appellate review, and where an appellant fails to do so, his claim is considered waived. *Commonwealth v. Muntz*, 428 Pa.Super. 99, 107, 630 A.2d 51, 55 (1993). Because appellant has failed to provide us with the necessary materials to review his claim, it is waived.

In his final issue, appellant claims that trial counsel was ineffective for failing to request that the court *not give* the "no adverse inference" charge, which only highlighted the fact that appellant did not testify on his own behalf, and for not objecting to the form of the charge given.

Our supreme court has held that it is reversible error for the trial court to refuse to give the "no adverse inference" charge when requested to do so in a timely fashion, *Commonwealth v. Lewis*, 528 Pa. 440, 598 A.2d 975 (1991), and also that it is reversible error for the trial court to give the "no adverse inference" charge when the defendant requests that no such instruction be given. *Commonwealth v. Edwards*, 535 Pa. 575, 637 A.2d 259 (1993). We are unaware of any caselaw, however, which finds counsel ineffective for failing to request that the "no adverse inference" charge not be given. In

support of his argument, appellant proffers *Commonwealth v. Khamphouseane*, 434 Pa.Super. 93, 642 A.2d 490 (1994), for the proposition that counsel may be ineffective for failing to request that the "no adverse inference" charge be given. *Khamphouseane*, however, is distinguishable on its facts from the case at bar.

In *Khamphouseane*, the prosecutor, in his closing argument, called direct attention to the fact that the defendant had not testified at trial. Despite this comment, a "no adverse inference" instruction was not given, and defense counsel failed to request such an instruction. On appeal, this court concluded that in light of the prosecutor's comment there was arguable merit to the ineffectiveness claim, and remanded for a hearing in order to discover counsel's reasons for not requesting the instruction.

In the present case, we are not faced with a situation where the failure of appellant to testify was raised before the jury. Whether or not to request a "no adverse inference" instruction is a strategic decision to be made by counsel. *See Lewis, supra*. Appellant has failed to point to any facts in the present case which would support his contention that it was unwise for counsel to request that the instruction not be given. As such, counsel may have reasonably believed that the jury would speculate why appellant had not testified, and that the jury may have held this failure to testify against appellant. In such circumstances, there existed a reasonable basis for not objecting to the charge being given. We also note that appellant has not demonstrated, nor can we discern from an independent review of the record, that he was prejudiced by counsel's action. *See Commonwealth v. Howard*, 538 Pa. 86, 645 A.2d 1300 (1994) (defendant must demonstrate actual prejudice—that counsel's failure to request "no adverse inference" instruction had an actual adverse effect on outcome of proceeding).

Appellant also contends that the form of the "no adverse inference" charge given by the trial court was incorrect. The trial court instructed the jury as follows:

Before I go to the next step of what I'm going to talk to you about, I want to just mention again although it's been mentioned several times I cannot emphasis [sic] enough how important this is, Mr. Sneeringer did not testify. That's his right. His absolute constitutional right and you as jurors must accept the fact that you can draw no conclusion whatsoever from his failure to testify. There may be any number of reasons why that decision was made which bears in no way upon his guilt or non-guilt. So you cannot infer in any way that he has something to hide or he is possibly or probably or actually guilty just because he didn't make a statement and present himself to you.

This is easier to understand if you recall he has no burden of proving anything. The burden is on the Commonwealth to prove his guilt beyond a reasonable doubt. If the Commonwealth fails to prove his guilt beyond a reasonable doubt, you should find not guilty as your verdict. If they, that is the Commonwealth, has proven to you beyond a reasonable doubt the Defendant's guilt, then your verdict should be guilty regardless of what the defense has presented whether they presented anything or not. The purpose of the defense presentation at all to the extent that it was presented was for the purpose of attempting to create in your mind that there might be some reasonable doubt about some of the things that you heard and in that way attack the case presented by the Commonwealth. Of course before you can decide that any of the defense testimony impeached or attacked the credibility of the Commonwealth's witnesses and created any doubt in your mind, you have to judge those witness' [sic] testimony by the same standards of determining credibility as the Commonwealth's witnesses.

■ After reviewing this instruction, we find no error. Appellant alleges error based upon isolated portions of the charge. However, we review the charge as a whole, and will not find error based upon isolated excerpts. *See Shoup, supra.* The trial court's charge accurately and clearly pre-

sented the law to the jury, and was sufficient to guide its deliberations. Thus, appellant's final issue is without merit.

Judgment of sentence affirmed.