J-S22014-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ROGER MITCHELL RIERA | : | |
| | : | |
| Appellant | : | No. 1962 MDA 2018 |

Appeal from the PCRA Order Entered November 6, 2018
In the Court of Common Pleas of Lycoming County Criminal Division at
No(s):  CP-41-CR-0001459-2011

BEFORE:   SHOGAN, J., DUBOW, J., and PELLEGRINI*, J.

MEMORANDUM BY SHOGAN, J.:                     **FILED JUNE 21, 2019**

Roger Mitchell Riera ("Appellant") appeals from the order denying his

petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.

§§ 9541–9546.  We affirm.

> [Appellant] was charged with Murder of the Third Degree[,
> a felony] of the first degree; Voluntary Manslaughter, a felony of
> the first degree; Involuntary Manslaughter, a misdemeanor of the
> first degree; Aggravated Assault, a felony [of the second] degree,
> Aggravated Assault, a felony of the second degree; and Recklessly
> Endangering Another Person, a misdemeanor of the second
> degree. The charges were the result of the shooting death of
> Andrew Gula . . . on September 18, 2011.

***Commonwealth v. Riera***, 106 A.3d 175, 556 MDA 2013, at *6 (Pa. Super.

filed August 25, 2014) (unpublished memorandum) (quoting Trial Court

Opinion and Order, 4/2/13, at 1–2) (footnotes omitted).  A jury convicted

Appellant of third-degree murder, voluntary manslaughter, and aggravated

_____
*   Retired Senior Judge assigned to the Superior Court.

assault.[1] The trial court sentenced Appellant to incarceration for an aggregate term of fifteen to thirty years followed by five years of probation. Appellant filed post-sentence motions, which the trial court denied. Appellant filed an appeal. We affirmed the judgment of sentence, and the Pennsylvania Supreme Court denied Appellant's petition for allowance of appeal. *Id.* at *2, *appeal denied*, 113 A.3d 279 (Pa. 2015).

Appellant filed a *pro se* PCRA petition on March 7, 2016. The PCRA court appointed counsel, who filed an amended petition on June 30, 2016. The PCRA court conducted a hearing on July 20, 2018, at which Appellant and trial counsel testified. By order dated October 20, 2018, the PCRA court sent notice of its intent to dismiss Appellant's petition. Appellant filed objections to the notice on October 29, 2018, and the PCRA court dismissed the petition on November 5, 2018. This appeal followed. Appellant and the PCRA court complied with Pa.R.A.P. 1925.

On appeal, Appellant presents a single question for our consideration:

> Whether the record supports the conclusion of the PCRA court that trial counsel was not ineffective and that Appellant was not prejudiced by trial counsel's failure to ask questions on direct examination about his physical condition on the night of the incident when he was presenting an imperfect self-defense argument.

Appellant's Brief at 4 (full capitalization omitted).[2]

---

[1] 18 Pa.C.S. §§ 2502(c), 2503(b) and 2702(a)(1), respectively.

[2] The Commonwealth did not file a responsive brief.

Our standard of review of an order denying PCRA relief is whether the record supports the PCRA court's determination and whether the PCRA court's determination is free of legal error. **Commonwealth v. Staton**, 184 A.3d 949 (Pa. 2018). We consider the record in the light most favorable to the prevailing party in the PCRA court. **Commonwealth v. Mason**, 130 A.3d 601, 617 (Pa. 2015). We grant great deference to the PCRA court's findings that are supported in the record and will not disturb them unless they have no support in the certified record. **Commonwealth v. Rigg**, 84 A.3d 1080, 1084 (Pa. Super. 2014).

Appellant's issue challenges the effective assistance of trial counsel. Our Supreme Court has long stated that in order to succeed on a claim of ineffective assistance of counsel, an appellant must demonstrate (1) that the underlying claim is of arguable merit; (2) that counsel's performance lacked a reasonable basis; and (3) that the ineffectiveness of counsel caused the appellant prejudice. **Commonwealth v. Pierce**, 786 A.2d 203, 213 (Pa. 2001).

We have explained that counsel cannot be deemed ineffective for failing to pursue a meritless claim. **Commonwealth v. Loner**, 836 A.2d 125, 132 (Pa. Super. 2003) (*en banc*). Moreover, with regard to the second prong, we have reiterated that trial counsel's approach must be "so unreasonable that no competent lawyer would have chosen it." **Commonwealth v. Ervin**, 766 A.2d 859, 862-863 (Pa. Super. 2000) (quoting **Commonwealth v. Miller**,

431 A.2d 233 (Pa. 1981)). Our Supreme Court has discussed "reasonableness" as follows:

> Our inquiry ceases and counsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had **some reasonable basis** designed to effectuate his client's interests. The test is not whether other alternatives were more reasonable, employing a hindsight evaluation of the record. Although weigh the alternatives we must, the balance tips in favor of a finding of effective assistance as soon as it is determined that trial counsel's decision had any reasonable basis.

*Commonwealth v. Pierce*, 527 A.2d 973, 975 (Pa. 1987) (quoting *Commonwealth ex rel. Washington v. Maroney*, 235 A.2d 349 (Pa. 1967)) (emphasis in original).

In addition, we are mindful that prejudice requires proof that there is a reasonable probability that, but for counsel's error, the outcome of the proceeding would have been different. *Pierce*, 786 A.2d at 213. "A failure to satisfy any prong of the ineffectiveness test requires rejection of the claim of ineffectiveness." *Commonwealth v. Daniels*, 963 A.2d 409, 419 (Pa. 2009) (citation omitted). Thus, when it is clear that a petitioner has failed to meet the prejudice prong of an ineffective-assistance-of-counsel claim, the claim may be disposed of on that basis alone, without a determination of whether the first two prongs have been met. *Commonwealth v. Baker*, 880 A.2d 654, 656 (Pa. Super. 2005).

It is presumed that the petitioner's counsel was effective, unless the petitioner proves otherwise. *Commonwealth v. Williams*, 732 A.2d 1167,

1177 (Pa. 1999). Moreover, we are bound by the PCRA court's credibility determinations where there is support for them in the record. **Commonwealth v. Battle**, 883 A.2d 641, 648 (Pa. Super. 2005) (citation omitted).

Appellant was charged with, *inter alia*, third-degree murder. In order to establish guilt of third-degree murder, the Commonwealth must prove a defendant acted with malice. **Commonwealth v. Fisher**, 80 A.3d 1186, 1191 (Pa. 2013). Unlike the specific intent required for committing first-degree murder, "[m]alice consists of a wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty." **Commonwealth v. Kendricks**, 30 A.3d 499, 509 (Pa. Super. 2011) (quoting **Commonwealth v. Kellam**, 719 A.2d 792, 797 (Pa. Super. 1998)). Malice may be inferred from the totality of the circumstances, or from the defendant's use of a deadly weapon on a vital part of a victim's body. **Commonwealth v. Truong**, 36 A.3d 592, 598 (Pa. Super. 2012) (*en banc*).

Appellant attempted to defeat the charge of third degree murder by asserting imperfect self-defense, also known as unreasonable belief voluntary manslaughter. 18 Pa.C.S. § 2503(b).[3] The element of malice is rebutted

---

[3] The section provides: "A person who intentionally or knowingly kills an individual commits voluntary manslaughter if at the time of the killing he believes the circumstances to be such that, if they existed, would justify the killing under Chapter 5 of this title (relating to general principles of justification), but his belief is unreasonable." 18 Pa.C.S. § 2503(b).

when the evidence shows that a defendant acted in either self-defense or "imperfect" self-defense—that is, he used deadly force with the belief, however unreasonable, that it was immediately necessary to protect himself against death or serious bodily injury. 18 Pa.C.S. § 505(a);[4] ***Commonwealth v. Hart***, 565 A.2d 1212, 1217 (Pa. Super. 1989). A successful claim of self-defense results in acquittal, and a successful claim of imperfect self-defense reduces murder to voluntary manslaughter. 18 Pa.C.S. § 2503(b); ***Commonwealth v. Rivera***, 108 A.3d 779, 787 n.2 (Pa. 2014). Imperfect self-defense requires all of the other principles of justification be met with proof that "an unreasonable rather than a reasonable belief that deadly force was required to save the actor's life." ***Commonwealth v. Tilley***, 595 A.2d 575, 582 (Pa. 1991), 18 Pa.C.S. § 505(a). The Commonwealth has the burden to set forth sufficient evidence to rebut a defendant's self-defense claim. ***Commonwealth v. McClendon***, 874 A.2d 1223, 1229–1230 (Pa. Super. 2005). However, the defense fails if the defendant provoked the use of force against himself in the same encounter or failed to retreat when he knew he could do so. 18 Pa.C.S. § 505(b)(2); ***Truong***, 36 A.3d at 599.

According to Appellant, trial counsel was ineffective because she did not question Appellant about his medical issues at the time of the murder, which

---

[4] "The use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion." 18 Pa.C.S. § 505(a).

would have supported his claim of imperfect self-defense. Appellant's Brief at 12. Specifically, Appellant asserts that trial counsel should have questioned him about suffering from "diminish[ed] physical capabilities on the night of the incident to a degree that he felt he could only defend himself from a physical attack by use of his firearm." *Id.* at 16. According to Appellant:

> [t]he trial court made a ruling prior to [Appellant] testifying that he could not testify about what a doctor told him but he could testify about how he felt that night. The trial court ruled that this testimony was relevant to the defense that [Appellant] was presenting.

*Id.* Appellant complains that trial counsel "never elicited these facts, never asked [Appellant] the questions to support his defense and never raised this issue before the jury." *Id.* Furthermore, Appellant argues, counsel lacked a reasonable basis for failing to question Appellant; she simply forgot. *Id.* at 18. Appellant concludes that but for trial counsel's omission, the outcome of the trial would have been different because "the jury's decision could have turned on the presentation of the complete defense. . . ." *Id.* at 19.

The PCRA court disposed of Appellant's claim with the following analysis:

> Trial counsel testified that she believed that for as many times as she spoke with [Appellant] about his case, he did not tell her about his condition until during trial. He did not provide her with any additional information other than what he claimed he was told by a doctor. She was not given a name of a doctor so that counsel could investigate the claim . . . .
>
> On the issue of whether trial counsel should have asked [Appellant] about "how he felt" that night, the [c]ourt also finds no arguable merit to the claim. During the trial, a conference was held in the presence of [Appellant] on the issue of his testimony about how he felt the evening of the incident. *See* N.T. 8/15/2012

at pp. 55–59. The Commonwealth objected to [Appellant] being allowed to testify as to what a doctor may have told him about a medical condition he may have had, but that he could testify as to his physical condition the night of the murder. *Id.* at p. 56. Trial [c]ounsel when asked during the PCRA hearing why she did not ask [Appellant] directly about his medical condition she candidly testified that she had forgotten about it. However, in reviewing his testimony during the trial, the [c]ourt found that there were many times where [Appellant] could have testified as to how he was feeling and at one point when asked if he was "terrified," could have elaborated on the specific reasons why, which could have included testimony about his medical condition. N.T. 8/15/2018 at p. 81. The [c]ourt finds that considering the circumstances of this case, and the fact that after testifying, the jury did not believe [Appellant] and the reasons that he used to justify his use of a firearm, trial counsel's failure to ask [Appellant] specific questions on this issue does not rise to the level of ineffective assistance. It is clear that given the "circumstances of the particular case" her failure to inquire did not "undermine the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(ii). The jury chose not to believe [Appellant's] testimony. There is no indication from the evidence presented to this [c]ourt that they would have found differently and so [Appellant's] burden has not been met.

PCRA Court Opinion, 10/10/18, at 6–7.

Upon review, we find support in the record for the PCRA court's findings. ***Staton***, 184 A.3d 949. Furthermore, considering the record in the light most favorable to the Commonwealth and granting great deference to the PCRA court's findings, we discern no error. ***Mason***, 130 A.3d at 617; ***Rigg***, 84 A.3d at 1084. Trial counsel forgot to question Appellant directly about his physical condition on the night of the shooting. ***See*** N.T., 7/20/18, at 49 ("I may have just forgotten because I wanted him off the stand."). Nonetheless, our review of the certified record confirms that Appellant has failed to meet his burden of

proving counsel's ineffectiveness with evidence of a physical condition on the night of the murder that precluded his retreat. Thus, we affirm the trial court, albeit on a different basis. **Accord Commonwealth v. Moser**, 999 A.2d 602, 606 n.5 (Pa. Super. 2010) (stating that this Court may affirm a decision of the trial court if there is any basis on the record to support the trial court's ruling, even if we rely on a different basis).

Four eyewitnesses testified that Andrew Gula ("the victim") was intoxicated when the altercation with Appellant began outside of the Rumrunner's bar. **See** N.T. (Brian Savage), 8/13/12, at 90 ("[H]e was sort of struggling against me so he wasn't tanked but I'm sure he had a few."); N.T. (Jade Yeagle), 8/13/12, at 169 ("[H]e was intoxicated and seem a little unstable."); N.T. (Adam Phillips), 8/14/12, at 17 ("He was so intoxicated he would have fallen over a curb."); N.T. (Alexander Thomas), 8/14/12, at 52 ("I could see he was pretty drunk because his yelling was really slurred."). One eyewitness testified that when the victim ran after Appellant, the victim was stumbling and "his recovery wasn't typical of someone that was sober." N.T. (Alexander Thomas), 8/14/12, at 56, 58, 73. On the other hand, Appellant "was not a drinker," and he did not appear to be intoxicated that night. N.T., 8/13/12, at 38–39; N.T., 8/14/12, at 25; N.T., 8/15/12, at 62, 77.

According to Appellant, the victim repeatedly screamed, "I'm going to kill you," during the altercation. N.T., 8/15/12, at 68–69, 71. Appellant also testified that the victim was "screaming I'm going to kill you" while Appellant

walked away and while the victim was running after Appellant; Appellant was screaming back, "No. Stop." *Id.* at 71, 78, 80, 103–104. However, several eyewitnesses did not hear the victim screaming to Appellant, "I'm going to kill you!" during the verbal altercation or when the victim ran after Appellant;[5] nor did they hear Appellant screaming, "No! Stop!" to the victim before firing his gun. N.T., 8/13/12, at 90, 94, 106–107, 112-113, 131, 141, 151; 171, 174, 176; N.T., 8/14/12, at 37, 48–49, 53, 57–58. Appellant also claimed that the victim reached for something around his right hip while approaching Appellant, but Appellant could not see what it was; he believed it was a weapon. *Id.* at 71, 73–74, 125. Yet, eyewitness testimony revealed that the victim did not reach for anything and was unarmed. N.T., 8/13/12, at 64, 121, 124, 130–131, 141, 150–151; N.T., 8/14/12, at 18, 43–44, 49, 58, 86–91, 102–104; N.T., 8/15/12, at 10–12, 14.

Most notably, while Brian Savage restrained the victim, Appellant jogged away from the altercation and joined his friends. N.T., 8/15/12, at 71. Although he was "more than halfway to the car" when he heard people screaming, "Let him go," he slowed down once he reached his friends and continued walking into Community Park. *Id.* at 98–100, 120. Upon hearing the victim's approaching footsteps, Appellant turned around to face the victim

---

[5] Only Appellant's friends, Jade Yeagle and Adam Phillips, who were in front of Appellant, testified that they heard the victim screaming, "I'm going to kill you." N.T., 8/13/12, at 175; N.T., 8/14/12, at 20, 24, 27.

- 10 -

and shot him in the chest. N.T., 8/13/12, at 141; N.T., 8/15/12, at 30. After doing so, Appellant walked away from the victim, called the police, and waited by the car for their arrival. N.T., 8/13/12, at 177; N.T., 8/14/12, at 18; N.T., 8/15/12, at 71–72.

During his direct testimony, Appellant did not mention any physical condition that prevented him from retreating to his car, even when trial counsel asked him why he felt he had to shoot the victim. N.T., 8/15/12, at 81–82. When the prosecutor asked Appellant why he did not "run to the vehicle when [he was] already halfway there and [the victim] was all the way down the street," Appellant replied: "I figured he was still being restrained and that if he was let go I was hoping that he wasn't going to actually come after me or somebody else was going to get him." N.T., 8/15/12, at 121. Similarly, at the PCRA hearing Appellant presented no evidence as to what physical condition prevented him from retreating. N.T., 7/20/18, at 6–26.

The evidence established that Appellant was not acting in self-defense because he failed to retreat when he could have done so without danger of bodily injury. 18 Pa.C.S. § 505(b)(2); *Truong*, 36 A.3d at 599. Appellant has not proffered any evidence of a physical condition that prevented him from retreating and that trial counsel failed to elicit at trial. Thus, we conclude the PCRA court properly rejected Appellant's claim that trial counsel was ineffective.

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>06/21/2019</u>