J-S65034-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ROBERT SIDNEY LEE | : | |
| | : | |
| Appellant | : | No. 89 MDA 2018 |

Appeal from the Judgment of Sentence Entered August 17, 2017
In the Court of Common Pleas of Union County Criminal Division at
No(s):  CP-60-CR-0000269-2016

BEFORE:  SHOGAN, J., STABILE, J., and McLAUGHLIN, J.

MEMORANDUM BY McLAUGHLIN, J.:          **FILED FEBRUARY 19, 2019**

Robert Sidney Lee appeals from the judgment of sentence entered following his convictions for third-degree murder and tampering with physical evidence. We affirm, but vacate the portion of the trial court order denying Lee's ineffectiveness claim on its merits, as that claim was premature.

The Commonwealth charged Lee with criminal homicide, possessing an instrument of crime, and tampering with physical evidence.[1] Prior to trial, Lee's appointed counsel filed a praecipe to withdraw as counsel, indicating Lee desired to represent himself *pro se*. The court held a hearing on the status of Lee's representation.

---

[1] **See** 18 Pa.C.S.A. §§ 2501(a), 907(b), and 4910(1), respectively. The Commonwealth also initially charged Lee with two counts of aggravated assault, but later withdrew those charges.

At the hearing, Lee testified that he was unhappy with appointed counsel because counsel had not accepted the Commonwealth's offer to reduce the charges in exchange for waiving the preliminary hearing. N.T. (Withdrawal Motion), 5/31/17, at 3-4. The Commonwealth clarified that it had made no such offer, but had offered to reduce the charges to voluntary manslaughter in exchange for Lee's plea of guilty to that offense. *Id.* at 4. Lee countered that appointed counsel had miscommunicated that offer, and had also failed to include all of Lee's issues in his omnibus pre-trial motion; failed to pursue a motion for a change of venue; conducted a "lackluster" cross-examination of the Commonwealth's witnesses at the preliminary hearing; and failed to authorize the private investigator to investigate "certain people." *Id.* at 4-5. Lee added that appointed counsel had "called [him] a fool for speaking to the media telling the truth about" his case, referring to an interview Lee had given to a newspaper reporter. *Id.* at 8. Ultimately, Lee complained that appointed counsel was putting him "on a silver platter" for the prosecution, and agreed with the court's summation that Lee was generally unsatisfied with his representation. *Id.* at 5.

To avoid divulging privileged information, Lee's trial counsel declined to comment on Lee's specific complaints during the hearing, but stated that he has "a different version of events" than Lee portrayed. *Id.* at 8-9. The trial court told Lee to decide whether he wanted to keep his appointed counsel or waive his right to court-appointed representation and proceed *pro se*. *Id.* at 7, 9-10. Lee stated he did not want current counsel to represent him, but did

not waive his right to counsel. *Id.* at 8-10. The court denied both counsel's request to withdraw and Lee's implied request for a change of counsel.

At trial, the Commonwealth presented evidence that Lee stabbed his acquaintance, Jamal Britton, on July 16, 2016, and then discarded the murder weapon, a knife. Lee was six feet tall and weighed 200 pounds, and the victim was five feet, seven inches tall and weighed 119 pounds. Lee and the victim, who was intoxicated, had been socializing along with others at the home of Qaisha Jacobs in the hours before the stabbing. Lee and the victim got into an argument regarding Lee having referred to the victim as "SpongeBob SquarePants." N.T. (Trial), 6/19/19-6/21/19, at 96, 296, 300.[2] Lee asked the victim to "leave him alone," but continued "saying [provocative] things to" the victim. *Id.* at 96, 179-80.

After Jacobs believed that everyone had left, the victim returned, asking to speak with Jacobs, and Jacobs directed him to meet her behind the apartment building, so as not to wake her sleeping child. When Jacobs met the victim behind the apartment, they discovered that Lee was there. Lee asked the victim if he wanted to fight. The victim set down his book-bag, put "his hands up," and smiled. *Id.* at 150. Lee "reach[ed]" for something and then swung his arm at the victim. *Id.* The victim said, "You stabbed me." *Id.* Lee responded, "So what? Are you going to call the police?" *Id.* The victim answered, "[Y]es," and reached for his telephone. *Id.* at 150, 185. Lee

---

[2] This is the name of a cartoon character. N.T. (Trial) at 296.

charged the victim a second time, and Jacobs went inside. Lee followed Jacobs inside and told her to "go outside and check [her] boy," because Lee had "knocked him out." *Id.* at 151. Lee left the apartment but returned shortly thereafter, retrieved a hat, and left again. Jacobs called 911.

When the police arrived, paramedics aiding the victim saw Lee's car leave the complex. The victim died in the hospital a few hours later. An autopsy revealed that the stab wound to the victim's torso was four and a half inches deep and extended through the victim's kidney. Lee eventually gave a video-recorded statement to the police in which he stated that he had stabbed the victim in self-defense and then thrown the knife into a river. Lee also wrote a letter to Jacobs' neighbor, asking her to pressure Jacobs not to testify against him. Shortly before trial, a newspaper published an interview with Lee in which Lee claimed he stabbed the victim in self-defense.

The jury convicted Lee of third-degree murder[3] and tampering with evidence, but found him not guilty of possessing an instrument of crime. The court sentenced Lee to an aggregate of 18 years, nine months' to 40 years' incarceration.

The court appointed Lee new counsel for purposes of post-sentence proceedings. Lee filed a motion for post-sentence relief in which he claimed *inter alia*, that the verdict of guilty on the charge of third-degree murder was against the weight of the evidence, that the verdicts were inconsistent, and

---

[3] 18 Pa.C.S.A. § 2502(c).

that his trial counsel had provided ineffective assistance of counsel when conducting *voir dire*. After a hearing at which trial counsel testified regarding the *voir dire* proceedings and both parties had filed briefs on the post-sentence motion, the court issued an order and opinion denying relief.

Lee appealed, and raises the following issues:

I. Whether Mr. Lee's right to conflict-free counsel, pursuant to the Sixth Amendment of the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution, was violated and a new trial should be granted because the court abused its discretion in refusing to appoint new counsel where an irreconcilable conflict existed with trial counsel?

II. Whether the trial court's open hearing on trial counsel's motion to withdraw in which the court failed to conduct an appropriate inquiry from trial counsel on the conflict violated Mr. Lee's rights under the Sixth Amendment of the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution?

III. Whether the evidence at trial was insufficient as a matter of law to establish Mr. Lee's guilt beyond a reasonable doubt on the charge of the third[-]degree murder where there was insufficient evidence that he possessed the requisite malice required?

IV. Whether the trial court erred in denying post-sentence relief for a judgment of acquittal an[d]/or an arrest of judgment, where the court accepted an inconsistent verdict where Mr. Lee was acquitted of possession of an instrument of crime, but convicted of third[-]degree murder, when the proof required for both charges consisted of the same evidence of possessing and utilizing a knife.

V. Whether the verdict was against the weight of the evidence where the Commonwealth's principal eyewitness appeared to be under the influence at trial during her testimony, [and] gave numerous contradictory [statements] and inconsistent testimony?

VI. Whether the trial court's and trial counsel's perfunctory *voir dire* was insufficient to test the potential jurors' biases and ensure confidence in the outcome of Mr. Lee's trial?

Lee's Br. at 4-5 (italics added).

## I. Change of Counsel

Lee first argues that the trial court erred in denying his request to appoint new counsel and instead giving Lee the option of keeping appointed counsel or proceeding *pro se*. Lee claims that in deciding the request, the trial court erroneously focused on the adequacy of counsel's representation rather than exploring whether there was irreconcilable conflict within the attorney-client relationship. Lee argues that he testified at the hearing that he "was unhappy with counsel, did not trust him and viewed all of his advice and actions with suspicion," and the trial court was therefore "obligated to conduct a proper and probing inquiry into Mr. Lee's complaints in determining whether there is sufficient cause for the substitution of counsel." Lee's Br. at 18, 20.

A motion for change of appointed counsel "shall not be granted except for substantial reasons." Pa.R.Crim.P. 122(C); ***Commonwealth v. Keaton***, 45 A.3d 1050, 1071 (Pa. 2012). Substantial reasons exist when a defendant demonstrates that an irreconcilable conflict with counsel precludes counsel from representing him or her. ***Keaton***, 45 A.3d at 1071. A strained relationship with counsel, lack of faith in counsel's abilities, or a difference of opinion in trial strategy do not necessarily evidence irreconcilable differences. ***See Commonwealth v. Floyd***, 937 A.2d 494, 497-98, 500 (Pa.Super. 2007) (collecting cases; affirming finding that disagreement in trial strategy and

- 6 -

perceived deficits in counsel's representation did not rise to the level of irreconcilable differences).[4] "The decision of whether to appoint new counsel lies within the sound discretion of the trial court." **Keaton**, 45 A.3d at 1071.

In its Rule 1925(a) opinion, the trial court explained that it "was not persuaded that counsel was unable to represent [Lee] at trial." Trial Court Opinion, filed May 11, 2018, at 4. The court determined that although Lee was unhappy with counsel, "counsel was doing a commendable job" representing Lee. **Id.** It also noted that Lee "was argumentative and difficult to reason with." **Id.**

We find no abuse of discretion. The trial court provided Lee with ample opportunity to explain his differences with appointed counsel. Lee complained only that counsel was not honoring his requests with regard to trial strategy. The court found that these complaints did not rise to the level of irreconcilable differences, and we agree. **See Keaton**, 45 A.3d at 1071; **Floyd**, 937 A.2d at 500; **see also Commonwealth v. Brown**, 18 A.3d 1147, 1158 (Pa.Super. 2011) (noting defendant need not consent to every tactical decision of counsel, but is ultimate authority only on whether to plead guilty, waive a jury, testify, or appeal) (citing **Florida v. Nixon**, 543 U.S. 175, 187 (2004)). As Lee failed to demonstrate irreconcilable conflict, the trial court did not abuse its discretion in denying his request.

---

[4] **See also Keaton**, 45 A.3d at 1071 (holding no abuse of discretion in denial of motion to change appointed counsel, without hearing, where trial court found there was no reason counsel was incapable of zealous representation).

## II. Commonwealth's Presence at Change of Counsel Hearing

Lee next argues that the court erred in holding the hearing in open court and in the presence of the Commonwealth's attorney, as he claims this compromised "the revelation of trial preparation and possible strategy." Lee's Br. at 22. Lee cites **Daniels v. Woodford**, 428 F.3d 1181, 1200 (9th Cir. 2005), for the proposition that "[w]hen a conflict exists between a defendant and counsel, the trial court should examine the parties in private and in depth." Lee's Br. at 22.

First, we find the issue waived, as neither Lee nor his counsel objected to the presence of the Commonwealth at the time of the hearing. **See** Pa.R.A.P. 302(a).

However, we also conclude that were the issue preserved, no relief would be due. While an *ex parte* proceeding may be appropriate in situations in which the allegations of irreconcilable differences necessitate divulgence of privileged information, such was not the case here. Lee does not argue that he would have made any additional allegations that would have amounted to irreconcilable differences had the Commonwealth been absent from the hearing.

To the extent that Lee relies on **Daniels**, it is not controlling authority in this Court. Moreover, in that case, the Ninth Circuit found that there was a "serious conflict" between the defendant and his appointed attorney, and that the trial court never questioned the defendant at all regarding the conflict.

*Daniels*, 428 F.3d at 1198-1200. It is thus inapposite, as the trial court here questioned Lee and found no irreconcilable differences existed.

### III. Sufficiency of the Evidence

Lee argues that there was insufficient evidence to support the jury's third-degree murder conviction, as there was no evidence that he acted with malice when stabbing the victim. According to Lee, the trial testimony established that the victim was intoxicated and acting irrationally; Lee had repeatedly asked the victim to leave him alone; there were no prior or contemporaneous statements indicating malice; and he stabbed the victim only once, with a "one-in-a-million cut and an improbable result." Lee's Br. at 24-25. He also argues that the Commonwealth failed to disprove his justification defense because "there was evidence elicited at trial that inferred that the victim may have been armed." *Id.* at 25.

Sufficiency of the evidence is a question of law, and thus "our standard of review is *de novo* and our scope of review is plenary." *Commonwealth v. Giron*, 155 A.3d 635, 638 (Pa.Super. 2017). We consider whether the trial evidence, viewed in the light most-favorable to the verdict winner, would allow the fact-finder to find every element of the crime beyond a reasonable doubt. *Commonwealth v. Gooding*, 818 A.2d 546, 549 (Pa.Super. 2003) (citing *Commonwealth v. DiStefano*, 782 A.2d 574, 582 (Pa.Super. 2001)). We will not disturb the verdict "unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." *Id.* (quoting *DiStefano*, 782 A.2d at 582).

The Commonwealth must prove a defendant acted with malice in order to establish guilt of third-degree murder. ***Commonwealth v. Fisher***, 80 A.3d 1186, 1191 (Pa. 2013). Unlike the specific intent required for committing first-degree murder, "[m]alice consists of a wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty." ***Commonwealth v. Kendricks***, 30 A.3d 499, 509 (Pa.Super. 2011) (quoting ***Commonwealth v. Kellam***, 719 A.2d 792, 797 (Pa.Super. 1998)). "Malice exists where the principal acts in gross deviation from the standard of reasonable care, failing to perceive that such actions might create a substantial and unjustifiable risk of death or serious bodily injury." ***Id.*** Malice may be inferred from the totality of the circumstances, or from the defendant's use of a deadly weapon on a vital part of a victim's body. ***Commonwealth v. Truong***, 36 A.3d 592, 598 (Pa.Super. 2012) (*en banc*).

The element of malice is rebutted when the evidence shows that a defendant acted in either self-defense or "imperfect" self-defense—that is, he used deadly force with the belief, however unreasonable, that it was immediately necessary to protect himself against death or serious bodily injury. 18 Pa.C.S.A § 505(a); ***Commonwealth v. Hart***, 565 A.2d 1212, 1217 (Pa.Super. 1989). A successful claim of self-defense results in acquittal, and a successful claim of imperfect self-defense reduces murder to voluntary manslaughter. 18 Pa.C.S.A § 2503(b); ***Commonwealth v. Rivera***, 108 A.3d 779, 787 n.2 (Pa. 2014). It is the Commonwealth's burden to set forth sufficient evidence to rebut a defendant's self-defense claim.

- 10 -

*Commonwealth v. McClendon*, 874 A.2d 1223, 1229-30 (Pa.Super. 2005). However, the defense must fail if the defendant provoked the use of force against himself in the same encounter or failed to retreat when he knew he could do so. 18 Pa.C.S.A § 505(b)(2); *Truong*, 36 A.3d at 599.

We conclude that the trial evidence was sufficient to prove Lee acted with malice, as he used a deadly weapon on a vital part of the victim's body. *Truong*, 36 A.3d at 598. Moreover, the Commonwealth presented evidence to rebut Lee's contention that he acted in either self-defense or imperfect self-defense. The testimony established that Lee was significantly larger than the victim; invited the unarmed victim to fight; charged him a second time after stabbing him; did not help, or call for help, after stabbing him; returned to the scene only to retrieve his hat; fled in his car when law enforcement arrived; disposed of the murder weapon; and attempted to convince the eyewitness not to testify. These facts were sufficient for the jury to conclude, beyond a reasonable doubt, that Lee did not believe that it was immediately necessary to stab the victim to prevent his own death or serious bodily injury; that he provoked the use of force upon himself; and/or that he did not retreat despite an ability to do so. 18 Pa.C.S.A § 505(b)(2); *Truong*, 36 A.3d at 599. The evidence was thus sufficient to support the verdict.

### IV. Inconsistent Verdicts

Lee argues that because he was acquitted of possession of an instrument of crime, his conviction for third-degree murder cannot stand. According to Lee, both offenses required the same underlying proof of

"possessing and utilizing the knife to commit homicide," and thus the jury's acquittal of possession of an instrument of crime renders the conviction of third-degree murder "insupportable." Lee's Br. at 27. Lee's issue presents a question of law, to which we apply a *de novo* standard of review. ***Commonwealth v. Moore***, 103 A.3d 1240, 1244 (Pa. 2014).

"[A] defendant may not challenge his conviction on one count when it is inconsistent with the jury's verdict of acquittal on another count." ***Id.*** at 1246. This is because, in such a case, although a jury conviction establishes that the jury found each element of a crime beyond a reasonable doubt, no such factual inference can be made by a jury's acquittal. ***Id.*** at 1250; ***see also id.*** at 1242, 1250 (affirming conviction of possessing instrument of crime despite jury's acquittal of murder following self-defense claim). Thus, here, we cannot infer from the jury's acquittal on possession of an instrument of crime that the evidence at Lee's trial failed to meet any element of that offense, or allow such an inference to undermine the jury's conclusion that the evidence **did** meet each element of third-degree murder. Lee's fourth issue affords him no relief.

## V. Weight of the Evidence

Lee argues that the verdict was against the weight of the evidence because Jacobs' eyewitness testimony "was so inherently unreliable and contradictory" that it could not have been accepted "by any reasonable juror." Lee's Br. at 29. Lee claims that Jacobs has "very limited intellectual functioning,[]a learning disability[,] and could not read or write." ***Id.*** at 28

(citing N.T. (Trial) at 164-65). Lee further argues that Jacobs was taking the prescription painkiller Percocet on the day of trial, due to injuries she recently sustained in a car accident, and that she gave testimony that was inconsistent with prior statements she made to the police, in which she had stated she was not a witness to the incident.

"The weight of the evidence is exclusively for the finder of fact, which is free to believe all, part, or none of the evidence[.]" **Commonwealth v. DeJesus**, 860 A.2d 102, 107 (Pa. 2004) (citation omitted). It is the purview of the fact-finder to "assess the credibility of the witnesses" and resolve inconsistent testimony. **Id.** Thus, a trial court should not grant a motion for a new trial "because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion," but only when "certain facts are so clearly of greater weight" than others that "the jury's verdict is so contrary to the evidence as to shock one's sense of justice." **Commonwealth v. Clay**, 64 A.3d 1049, 1055 (Pa. 2013). Upon review of a weight claim, we give great deference to the discretion of the trial judge, who "has had the opportunity to hear and see the evidence presented," and will not reverse the court's decision absent a palpable abuse of that discretion. **Id.** at 1056.

The weight and credibility due Jacobs' testimony in light of her learning disability, Percocet use, and prior inconsistent statements were questions for the fact-finder to resolve, and the trial court deferred to the weight given by the jury on these points. **See** Tr. Ct. Op. at 5. The trial court, which observed

the testimony, also disagreed with Lee's assessment that the use of drugs affected Jacobs' trial testimony. ***See id.***[5] Moreover, as the trial court noted, the Commonwealth presented other evidence of guilt in addition to Jacobs' testimony, including Lee's statements to the police and interview with the news reporter, in which he argued self-defense, the autopsy report showing the depth of the fatal wound, and the testimony of the neighbor who received a letter from Lee asking her to pressure Jacobs not to testify. We thus find no abuse of discretion on the part of the trial court, and Lee's challenge to the weight of the evidence to be meritless.

## VI. *Voir Dire*

In his final issue, Lee argues that "trial counsel's *voir dire*, covering a paltry single page and a half of transcripts, failed to provide even a modicum of information regarding the potential biases held by prospective jurors." Lee's Br. at 31. Lee also complains that counsel did not question the jurors on their views of the justification of self-defense. ***Id.*** at 31-32. Lee posits that "counsel's performance was so deficient that 'it permeated his entire trial with obvious unfairness.'" ***Id.*** at 32. Lee argues that his "ineffectiveness claim is ripe on direct appeal" because "[t]rial counsel testified to this issue in the post-sentence hearing." Lee's Reply Br. at 11 n.3, 12. Lee adds that, "[d]elaying the disposition of Mr. Lee's claim to a post-conviction proceeding

---

[5] We add that there was no testimony regarding Jacobs' intellectual functioning, and that Jacobs' actual testimony was that because of a learning disability, she "can't read or write and spell **that good**," N.T. (Trial) at 164 (emphasis added).

would merely exacerbate the injustice already operated by his trial counsel's deficit performance." *Id.* at 11. Although Lee mainly frames his argument as one of ineffective assistance of counsel, he also claims the *voir dire* was inadequate due to "an entire breakdown of the system that was developed to ensure him a trial by an impartial jury," and phrases his issue to include an alleged error of the court. Lee's Br. at 5, 31.

First, to the extent Lee claims the trial court erred when conducting *voir dire*, that issue is waived, as Lee's counsel made no timely objection. **See Commonwealth v. Doe**, 462 A.2d 762, 765 (Pa.Super. 1983).

Regarding Lee's claim of trial counsel's ineffectiveness during *voir dire*, as noted above, Lee filed a post-sentence motion raising the issue, and the court held a hearing. At the hearing, trial counsel was questioned regarding his trial strategy during *voir dire*. After both parties had submitted briefs, the trial court denied the motion for post-sentence relief. In the opinion accompanying the order denying relief, the court stated it agreed that ineffectiveness issues "are more appropriately raised in Post-Conviction proceedings," but nonetheless addressed the merits of the claim and found that the ineffectiveness claim lacked merit. Op., 12/28/17, at 2.

As a general rule, "a defendant should wait to raise claims of ineffective assistance of trial counsel until collateral review proceedings." **Commonwealth v. Delgros**, 183 A.3d 352, 358 (Pa. 2018) (quoting **Commonwealth v. Grant**, 813 A.2d 726, 738 (Pa. 2002), internal quotation marks omitted). Three exceptions to the **Grant** rule sanction unitary review

and afford trial courts the discretion to entertain ineffectiveness claims prior to collateral proceedings. *Id.* at 360-61. The first exception applies under "extraordinary circumstances when a discrete claim of trial counsel ineffectiveness is apparent from the record and meritorious to the extent that immediate consideration best serves the interests of justice." *Id.* at 360 (citing *Commonwealth v. Holmes*, 79 A.3d 562, 563 (Pa. 2013)). The second exception is applicable where "there is good cause shown and the defendant knowingly and expressly waives his entitlement to seek subsequent PCRA[6] review of his conviction and sentence." *Id.* (citing *Holmes*, 79 A.3d at 564). The third exception requires trial courts to entertain ineffectiveness claims "where the defendant is statutorily precluded from obtaining subsequent PCRA review." *Id.* at 361.

Here, the merit of Lee's ineffectiveness claim was not apparent on the record. Our conclusion is buttressed by the fact that the trial court held a post-sentence evidentiary hearing on trial counsel's strategy during *voir dire*. Thus, the first exception to the *Grant* rule, which allows a trial court the discretion to grant relief on a claim of ineffectiveness that is both meritorious and apparent from the record, does not apply.

Nor does the second exception apply, as Lee does not assert any "good cause" why the ineffectiveness claim should not await collateral review— except for the delay that necessarily accompanies all collateral review. And,

_____

[6] Post Conviction Relief Act. *See* 42 Pa.C.S.A. §§ 9541-9546.

- 16 -

importantly, Lee did not waive his right to seek relief *via* the PCRA, including other claims based on allegations of trial counsel's ineffectiveness. Therefore, despite our potential ability to glean whether Lee was denied effective assistance of counsel during *voir dire*, our consideration of such a claim during this, Lee's direct appeal, would deprive Lee of rights he has not clearly forfeited.

Finally, the third exception to the **Grant** rule does not apply, as Lee is not statutorily precluded from seeking PCRA relief.

As no exception to the **Grant** rule applied, Lee's ineffectiveness claim was premature, and the trial court abused its discretion in entertaining it. We therefore vacate the portion of the order denying post-sentence relief in which the trial court rejected Lee's ineffectiveness claim on its merits. We affirm the denial of post-sentence relief on the alternative basis that the ineffectiveness claim was premature. **See Commonwealth v. Clouser**, 998 A.2d 656, 661 n.3 (Pa.Super. 2010) ("It is well-settled that this Court may affirm on any basis"). Our disposition is without prejudice to Lee's right to present his ineffectiveness claim in a timely PCRA petition.

Judgment of sentence affirmed. Portion of Order of December 28, 2017, deciding merits of ineffective assistance of counsel claim vacated as premature, but denial of post-sentence relief affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/19/2019