J-S43035-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| TROY DELRON ROBINSON | : | |
| | : | |
| Appellant | : | No. 1876 WDA 2019 |

Appeal from the PCRA Order Entered December 5, 2019
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s):  CP-02-CR-0007055-2010

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| TROY DELRON ROBINSON | : | |
| | : | |
| Appellant | : | No. 1877 WDA 2019 |

Appeal from the PCRA Order Entered December 5, 2019
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s):  CP-02-CR-0006561-2011

BEFORE:  SHOGAN, J., STABILE, J., and KING, J.

MEMORANDUM BY KING, J.:                        FILED JANUARY 21, 2021

Appellant, Troy Delron Robinson, appeals from the order entered in the

Allegheny County Court of Common Pleas, which denied his first petition filed

pursuant to the Post Conviction Relief Act ("PCRA").[1]  We affirm.

_____

[1] 42 Pa.C.S.A. §§ 9541-9546.

This Court has previously set forth the relevant facts and some of the procedural history of this case as follows:

> [I]n the early morning hours of February 26, 2010, Christopher Solis was awakened after hearing 5 gunshots. The shots came from the direction of the Hide–Away Bar. As he looked out his window, Solis saw a male wearing [bulky] winter clothing walking down the street in deep snow looking back several times in the direction of the bar.
>
> At approximately 2:44 a.m. that day, police were dispatched to the Hide–Away Bar as a result of Solis' call to 911. When police arrived at the scene, they were not able to find evidence of gunfire, a suspect, or victims. Snow was falling that morning.
>
> The next day, a body was found in deep snow in an area not far from the bar. It was later determined that the victim died as a result of multiple gunshot wounds to his torso, and that bullets recovered were all fired from the same firearm.
>
> Detectives began an investigation and were able to ascertain that videos existed from both inside and outside the bar and that there was projectile damage to the structure that housed the bar. The manager of the bar also gave police a bullet that she found in front of the bar's door as she was salting and sweeping the sidewalk.
>
> The inside video showed that on the night in question, both Appellant and the victim were in the bar. The video shows Appellant standing next to the victim as the victim's head is lying on the bar. The victim lifts his head and is given a bottle of water by the bartender. Appellant then walks out of the bar and the victim follows holding the bottled water. The outside video shows the two outside of the bar and Appellant taking the victim's water, drinking it, and then returning it to the victim. Appellant then backs out of camera view, but the video shows the victim being shot and falling down.

> The bartender at the Hide–Away Bar testified that the victim was asleep at the bar when Appellant went up to him and said: "I got you mother fucker, now you are all asleep…." When the victim and Appellant went outside of the bar, an eyewitness, who had been waiting to give Appellant a ride, testified that he heard the victim and Appellant yelling obscenities at each other. The witness saw Appellant step away from the victim, and then heard gunshots. Appellant ran away.
>
> Tonya Darby, Appellant's girlfriend, also testified that she was with Appellant 12 days earlier when he and the victim got into a heated argument in the Hide–Away Bar, on February 14, 2010. The argument continued outside of the bar. In that incident, the victim in this case pointed a gun at Appellant. The confrontation was then defused without further incident. The bartender also confirmed that this Valentine's Day incident occurred between Appellant and the victim.

Trial Court 1925(a) Opinion, 10/5/2012, at 4-6.

Appellant was charged with one (1) count of first-degree murder, one (1) count of persons not to possess a firearm, and one (1) count of carrying a firearm without a license. The trial court subsequently severed the persons not to possess a firearm count and reassigned it to a new case number.[4]

> [4] Appellant was found guilty of this count at a non-jury trial held on June 2, 2011.[2]

The trial court held a jury trial for the remaining counts. With the jury unable to reach a verdict, the trial court declared a mistrial and scheduled the case for retrial. A retrial was held, and the jury found Appellant guilty on both counts.

_____

[2] All charges were originally docketed at CP-02-CR-0007055-2010 ("docket 7055-2010"). Once severed, the persons not to possess firearms charge was docketed at CP-02-CR-0006561-2011 ("docket 6561-2011").

> At sentencing, the trial court imposed the mandatory sentence of life imprisonment for first-degree murder, and a concurrent term of 3½ to 7 years for carrying a firearm without a license. For the remaining firearm conviction, the trial court sentenced Appellant to a consecutive term of 5 to 10 years.
>
> Appellant filed timely post-sentence motions [at both underlying dockets] that were denied by operation of law [on January 23, 2012]. ...

Commonwealth v. Robinson, No. 308 WDA 2012, 2014 WL 10986804, at *1–2 (Pa.Super. Feb. 5, 2014) (unpublished memorandum) (some internal footnotes omitted).

Appellant timely filed a notice of appeal solely at docket 7055-2010. This Court affirmed the judgment of sentence on February 5, 2014, and on August 12, 2014, our Supreme Court denied allowance of appeal. See Commonwealth v. Robinson, 97 A.3d 794 (Pa.Super. 2014) (unpublished memorandum), appeal denied, 626 Pa. 698, 97 A.3d 744 (2014).

On March 12, 2015, Appellant filed his first PCRA petition pro se at both underlying docket numbers. The court appointed counsel on March 18, 2015. Following the grant of numerous requests for an extension of time, counsel filed an amended PCRA petition on May 3, 2019. The Commonwealth filed an answer on July 30, 2019. On August 7, 2019, the court issued notice of its intent to dismiss the petition without a hearing per Pa.R.Crim.P. 907. Following the grant of an extension, Appellant responded on September 30, 2019. On December 5, 2019, the court denied PCRA relief. Appellant timely

filed separate notices of appeal at each underlying docket on December 19, 2019.[3] That day, the court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant timely complied on January 8, 2020.

Appellant raises three issues for our review:

> Whether trial counsel was ineffective in failing to object to the trial court's mistrial declaration; in failing to request that the jury be instructed that it should proceed to consideration of the evidence as to third-degree murder if deadlocked on first-degree murder; and in failing to assert and preserve an objection that retrial under these circumstances violated the Double Jeopardy Clause[?]

> Whether prior counsel was ineffective in abandoning and failing to preserve a challenge to the jury instruction that carrying a firearm without a license may constitute circumstantial evidence of intent to commit murder, where the instruction undercuts reasonable doubt and its continued viability is suspect[?]

> Whether [Appellant] was denied his constitutional rights to due process, fundamental fairness and the effective assistance of trial counsel by virtue of the court's denial of his meritorious pretrial motion for new counsel due to conflict of interest, where the trial court failed to meaningfully inquire into the nature of the conflict prior to denying the motion[?] And whether prior counsel were ineffective in failing to recognize and preserve this claim for review[?]

(Appellant's Brief at 7) (re-ordered for purposes of disposition).

As a preliminary matter, the timeliness of a PCRA petition is a jurisdictional requisite. Commonwealth v. Hackett, 598 Pa. 350, 956 A.2d

_____

[3] This Court consolidated the appeals sua sponte on January 3, 2020.

- 5 -

978 (2008), cert. denied, 556 U.S. 1285, 129 S.Ct. 2772, 174 L.Ed.2d 277 (2009). Pennsylvania law makes clear that no court has jurisdiction to hear an untimely PCRA petition. Commonwealth v. Robinson, 575 Pa. 500, 837 A.2d 1157 (2003). The PCRA requires a petition, including a second or subsequent petition, to be filed within one year of the date the underlying judgment becomes final. 42 Pa.C.S.A. § 9545(b)(1). A judgment of sentence is final "at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking review." 42 Pa.C.S.A. § 9545(b)(3). To obtain merits review of a PCRA petition filed more than one year after the judgment of sentence became final, the petitioner must allege and prove at least one of the three enumerated timeliness exceptions. See 42 Pa.C.S.A. § 9545(b)(1)(i)-(iii).

Instantly, Appellant filed his current PCRA petition at both underlying docket numbers. Nevertheless, our review of the record makes clear that Appellant did not pursue direct review in connection with docket 6561-2011, regarding his persons not to possess firearms conviction. Consequently, Appellant's judgment of sentence at that docket became final on or around February 22, 2012, after expiration of the time for filing a notice of appeal with this Court following the denial of his post-sentence motions. See 42 Pa.C.S.A. § 9545(b)(3). Appellant's current PCRA petition, filed on March 12, 2015, is therefore patently untimely as it relates to docket 6561-2011. See

42 Pa.C.S.A. § 9545(b)(1). Appellant did not assert in his PCRA petition (or in this appeal) any exception to the PCRA time-bar. See id. Thus, Appellant's PCRA petition regarding docket 6561-2011 remains time-barred.

In any event, Appellant's appellate issues pertain only to his convictions at docket 7055-2010. As Appellant pursued direct review at that docket number, his judgment of sentence at docket 7055-2010 became final on or around November 10, 2014, after expiration of the time for filing a petition for writ of certiorari with the U.S. Supreme Court. See U.S.Sup.Ct.R. 13 (providing 90 days to file petition for writ of certiorari). Appellant's current PCRA petition, filed on March 12, 2015, is therefore timely regarding docket 7055-2010. See 42 Pa.C.S.A. § 9545(b)(1). Thus, we proceed to our merits review of Appellant's claims at docket 7055-2010.

Our standard of review of the denial of a PCRA petition is limited to examining whether the record evidence supports the court's determination and whether the court's decision is free of legal error. Commonwealth v. H. Ford, 947 A.2d 1251 (Pa.Super. 2008), appeal denied, 598 Pa. 779, 959 A.2d 319 (2008). This Court grants great deference to the findings of the PCRA court if the record contains any support for those findings. Commonwealth v. Boyd, 923 A.2d 513 (Pa.Super. 2007), appeal denied, 593 Pa. 754, 932 A.2d 74 (2007). We give no such deference, however, to the court's legal conclusions. Commonwealth v. J. Ford, 44 A.3d 1190 (Pa.Super. 2012). Further, a petitioner is not entitled to a PCRA hearing as a matter of right; the

PCRA court can decline to hold a hearing if there is no genuine issue concerning any material fact, the petitioner is not entitled to PCRA relief, and no purpose would be served by any further proceedings. Commonwealth v. Wah, 42 A.3d 335 (Pa.Super. 2012).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Susan Evashavik DiLucente, we conclude Appellant's first and second issues on appeal merit no relief. The PCRA court opinion comprehensively discusses and properly disposes of those claims. (See PCRA Court Opinion, filed March 11, 2020, at 5-14) (finding: (1) (pages 5-11) at first trial, court issued progression charge to jury, instructing jury to initially decide if Appellant was guilty of first-degree murder, and if it did not find Appellant guilty of first-degree murder, to then deliberate on third-degree murder; during deliberations, jury informed court on multiple occasions that jury was deadlocked; court declared mistrial for reasons of manifest necessity based on jury's deadlock; Appellant complains trial counsel was ineffective for failing to object to declaration of mistrial, failing to request that court instruct jury to deliberate on third-degree murder charge if it was deadlocked on first-degree murder, and failing to move for dismissal of retrial on first-degree murder charge based on Double Jeopardy, to extent that jury might have acquitted Appellant of first-degree murder and been deadlocked on third-degree murder; nevertheless, court's progression instruction was proper

under Pennsylvania law; additionally, court properly declared mistrial based on manifest necessity where it was clear jury was hopelessly deadlocked; because court properly charged jury regarding first and third-degree murder, was forced to declare mistrial after jury became hopelessly deadlocked and could not reach verdict, and appropriately ordered retrial as result, Appellant's claim that trial counsel was ineffective lacks merit; (2) (pages 11-14) at retrial, trial counsel objected to court's instruction that, if jury found defendant used firearm in committing murder and defendant did not have license to carry firearm, jury could regard that as one piece of circumstantial evidence of Appellant's intent to commit murder; Appellant complains appellate counsel failed to advance this claim on direct appeal; nevertheless, court issued permissible, not mandatory, jury instruction, and facts of case provided rational way for jury to connect Appellant's firearm offense to murder; Appellant acknowledges that court's instruction was proper but he objects to majority's reasoning in relevant Supreme Court case; given state of law, evidentiary record, and Appellant's concession, appellate counsel had no basis to advance Appellant's proffered issue on appeal; counsel cannot be ineffective for failing to advance change in law; thus, Appellant's ineffectiveness claim lacks arguable merit).[4]  The record supports the PCRA court's analysis of Appellant's first and second issues.  See H. Ford, supra.

---

[4] The full citation for Commonwealth v. Roane, cited on page 10 of the PCRA court's opinion, is 142 A.3d 79, 88 (Pa.Super. 2016).

In his third issue, Appellant argues that prior to his retrial, Appellant requested substitution of privately retained trial counsel due to disagreements between them. Appellant asserts that trial counsel informed the court that the disagreements involved how to proceed at the retrial, but defense counsel did not elaborate further due to attorney/client privilege. Appellant complains trial counsel was ineffective for failing to request an ex parte proceeding, in which counsel could have gone into more detail about the scope of the conflict at issue. Appellant insists he did not request a change of counsel in bad faith or to delay the proceedings. Appellant claims the court's denial of his motion for substitution of counsel caused Appellant prejudice. Appellant concludes the trial court erred in denying his motion and trial counsel rendered ineffective assistance with respect to this motion. We disagree.

Initially, the PCRA court deemed Appellant's claim of trial court error waived because it could have been raised on direct appeal. (See PCRA Court Opinion at 15) (citing 42 Pa.C.S.A. § 9543(a)(3) (stating to be eligible for relief under PCRA, petitioner must plead and prove allegation of error was not waived); and 42 Pa.C.S.A. § 9544(b) (explaining issue is waived if petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal, or in prior state post-conviction proceeding)). To the extent Appellant's claim on appeal sounds in trial court error, we agree with the PCRA court's finding of waiver. See id.

Regarding Appellant's related claim of trial counsel's ineffectiveness,

Pennsylvania law presumes counsel has rendered effective assistance. Commonwealth v. Williams, 597 Pa. 109, 950 A.2d 294 (2008). When asserting a claim of ineffective assistance of counsel, the petitioner is required to demonstrate: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable strategic basis for his action or inaction; and, (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different. Commonwealth v. Kimball, 555 Pa. 299, 724 A.2d 326 (1999). The failure to satisfy any prong of the test for ineffectiveness will cause the claim to fail. Williams, supra.

"Whether a petition for change of...counsel should be granted is within the sound discretion of the trial court. Moreover, although the right to counsel is absolute, there is no absolute right to a particular counsel, and...counsel shall not be removed except for substantial reasons." Commonwealth v. Moore, 534 Pa. 527, 539, 633 A.2d 1119, 1125 (1993), cert. denied, 513 U.S. 1114, 115 S.Ct. 908, 130 L.Ed.2d 790 (1995) (internal citations omitted). See also Pa.R.Crim.P. 122(C) (stating motion for change of counsel shall not be granted except for substantial reasons). "In some cases, we have concluded that 'substantial reasons' or 'irreconcilable differences' warranting appointment of new counsel are not established where the defendant merely alleges a strained relationship with counsel, where there is a difference of opinion in trial strategy, where the defendant lacks confidence in counsel's ability, or where there is brevity of pretrial communications."

Commonwealth v. Floyd, 937 A.2d 494, 497 (Pa.Super. 2007).

Instantly, on the morning scheduled for Appellant's jury selection in the retrial, the court heard argument on Appellant's motion for substitution of counsel. Appellant argued he no longer wanted trial counsel to represent him because Appellant was not comfortable with trial counsel's preparation of the case "the second time around." (N.T. Hearing, 6/3/11, at 2). Although trial counsel had been privately retained, Appellant asked if the court would appoint him a new attorney. The court explained to Appellant that trial counsel was very familiar with the facts of Appellant's case, and emphasized that trial counsel had done a good job for Appellant at the first trial, evidenced by the hung jury. The court reminded Appellant that at the first trial, trial counsel had persuaded at least some of the jurors to find in his behalf. (Id. at 3). Trial counsel then explained that Appellant did not believe counsel was properly prepared to go forward because they disagreed on how to proceed. Trial counsel did not divulge further details due to attorney/client privilege. (Id. at 4). Appellant stated that trial counsel does not "have to wholeheartedly agree but…[Appellant is] not comfortable with [trial counsel] representing [him]." (Id. at 5-6). Ultimately, the trial court viewed the conflict as a minor disagreement between Appellant and counsel, denied Appellant's motion, and appointed trial counsel to continue representing Appellant at the retrial.

On this record, we cannot agree with Appellant's position that trial

counsel was ineffective in failing to request an ex parte conversation with the trial court to divulge the details of the disagreement between Appellant and counsel. Based on the court's on-the-record remarks, we are not convinced there is a reasonable probability that the outcome of the proceedings would have been different had trial counsel made such a request. See Kimball, supra. Therefore, Appellant's ineffectiveness claim merits no relief.[5] Accordingly, we affirm the order denying PCRA relief.

Order affirmed.

Judge Shogan joins this memorandum.

Judge Stabile concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/21/2021

_____

[5] To the extent Appellant argues appellate counsel was ineffective in failing to raise on direct appeal the trial court's allegedly improper denial of his motion for substitution of counsel, Appellant did not specify that claim of error in his Rule 1925(b) statement, so it is waived. See Commonwealth v. Hansley, 24 A.3d 410 (Pa.Super. 2011), appeal denied, 613 Pa. 642, 32 A.3d 1275 (2011) (explaining general rule that issues not raised in concise statement will be deemed waived for review; concise statement must properly specify error to be addressed on appeal).

# Allegheny County - Department of Court Records
## Criminal Division - Filings Information

---

**County caseID:CP-02-CR-0007055-2010 (OPINION)**
**Case Description: COMMONWEALTH OF PENNSYLVANIA v. LNAME ROBINSON**

**Official Docket Entry, Sort By Document Number Ascending**

---

| Document Number | Title/Entry | Filing Date |
|---|---|---|
| 1 | OPINION | 03/11/2020 |

**ORIGINAL**
Criminal Division
Dept. Of Court Records
Allegheny County, PA

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA

v.

TROY DELRON ROBINSON

No.: CP-02-CR-0007055-2010
No.: CP-02-CR-0006561-2011

**Superior Court No.1876 WDA 2019**
**Superior Court No.1877 WDA 2019**

**OPINION**

BY:

Honorable Susan Evashavik DiLucente
533 Courthouse
436 Grant Street
Pittsburgh, PA 15219

COPIES TO:

Michael W. Streily, Esquire
Deputy District Attorney
Appellate Division
401 Allegheny County Courthouse
Pittsburgh, PA 15219

William C. Kaczynski, Esquire
564 Forbes Avenue
1004 Manor Complex
Pittsburgh, PA 15219

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA : CRIMINAL DIVISION

            vs.

CP-02-CR-0007055-2010
Superior Court #1876 WDA 2019

CP-02-CR-0006561-2011
Superior Court #1877 WDA 2019

TROY DELRON ROBINSON,

            Defendant.

## OPINION

Defendant Troy Delron Robinson has appealed the Court's December 5, 2019 order denying his request for post-conviction relief without a hearing (the "Order"). The Court now submits this Pa.R.A.P. 1925(a) opinion. For the reasons that follow, the Order should be affirmed.

## I.    Introduction

Though the instant appeal involves Mr. Robinson's first request for collateral relief, these proceedings already have a long history, stemming from the following facts, which the Court summarized in its opinion addressing Mr. Robinson's direct appeal:

> [I]n the early morning hours of February 26, 2010, Christopher Solis was awakened after hearing 5 gunshots. The shots came from the direction of the Hide-Away Bar. As he looked out his window, Solis saw a male wearing bulky winter clothing walking down the street in deep snow looking back several times in the direction of the bar.
>
> At approximately 2:44 a.m. that day, police were dispatched to the Hide-Away Bar as a result of Solis' calls to 911. When the police arrived at the scene, they

1

were not able to find evidence of gunfire, a suspect, or victims. Snow was falling that morning.

The next day, a body was found in deep snow in an area not far from the bar. It was later determined that the victim died as a result of multiple gunshot wounds to his torso, and that bullets recovered were all fired from the same firearm.

Detectives began an investigation and were able to ascertain that videos existed from both inside and outside the bar and that there was projectile damage to the structure that housed the bar. The manager of the bar also gave police a bullet that she found in front of the bar's door as she was salting and sweeping the sidewalk.

The inside video showed that on the night in question both [Mr. Robinson] and the victim were in the bar. The video shows [Mr. Robinson] standing next to the victim as the victim's head is lying on the bar. The victim lifts his head and is given a bottle of water by the bartender. [Mr. Robinson] then walks out of the bar and the victim follows holding the bottled water. The outside video shows the two outside of the bar and [Mr. Robinson] taking the victim's water, drinking it, and then returning it to the victim. [Mr. Robinson] then backs out of camera view, but the video shows the victim being shot and falling down.

The bartender at the Hide-Away Bar testified that the victim was asleep at the bar when [Mr. Robinson] went up to him and said: "I got you mother fucker, now you are all asleep . . ." When the victim and [Mr. Robinson] went outside the bar, an eye-witness, who had been waiting to give [Mr. Robinson] a ride, testified that he heard the victim and [Mr. Robinson] yelling obscenities at each other. The witness saw [Mr. Robinson] step away from the victim, and then heard gunshots. [Mr. Robinson] ran away.

Tonya Darby, [Mr. Robinson's] girlfriend, also testified that she was with [Mr. Robinson] 12 days earlier when he and the victim got into a heated argument in the

2

> Hide-Away Bar, on February 14, 2010. The argument
> continued outside of the bar. In that incident, the
> victim in this case pointed a gun at [Mr. Robinson]. The
> confrontation was then defused without further
> incident. The bartender also confirmed that this
> Valentine's Day incident occurred between [Mr.
> Robinson] and the victim.

See October 5, 2012, Pa.R.A.P. 1925(a) Opinion at 4-6.

The Commonwealth charged Mr. Robinson at CP-02-CR-0007055-2010 ("Case 1") with one count of each of the following: murder (18 Pa. C.S. §2501), persons not to possess a firearm (18 Pa. C.S. §6105(a)(1)), and carrying a firearm without a license (18 Pa. C.S. §6106). This Court severed the charge of persons not to possess a firearm, and that count was docketed at CP-02-CR-0006561-2011 ("Case 2").

Case 1 proceeded to a jury trial, which ended in a mistrial due to a hung jury on May 27, 2011. Case 2 went to a non-jury trial on June 2, 2011, and the Court found Mr. Robinson guilty. On June 8, 2011, a second jury trial for Case 1 began, and Mr. Robinson was ultimately convicted of first-degree murder (18 Pa. C.S. §2502(a)) and carrying a firearm without a license. Accordingly, Mr. Robinson was convicted of all charges lodged against him in Cases 1 and 2.

Mr. Robinson appeared for sentencing on August 24, 2011. At Case 1, this Court sentenced Mr. Robinson to life imprisonment for his murder conviction and a concurrent term of 3 ½ to 7 years' incarceration for the firearm violation. This Court sentenced Mr. Robinson to 5 to 10 years' imprisonment for the firearm infraction at Case 2, said sentence to run consecutively to those imposed at

3

Case 1. In the aggregate, Mr. Robinson received a life sentence followed by an additional 5 to 10 years in prison.

Mr. Robinson filed a timely post-sentence motion in Cases 1 and 2 on August 26, 2011. Said motion was denied by operation of law on January 23, 2012.

A timely notice of appeal at Case 1 was filed on February 21, 2012. Mr. Robinson did not appeal his conviction and sentence at Case 2, and the Superior Court docketed his lone appeal at 308 WDA 2012. On February 5, 2014, the Superior Court affirmed Mr. Robinson's judgment of sentence at Case 1.

Mr. Robinson subsequently filed a petition for allowance of appeal ("PAA") to the Pennsylvania Supreme Court at Case 1. The PAA was docketed at 116 WAL 2014 and denied on August 12, 2014.

On March 12, 2015, Mr. Robinson filed a pro se Post-Conviction Relief Act ("PCRA") petition in Cases 1 and 2. This Court appointed counsel to represent Mr. Robinson, and through counsel an amended PCRA petition was filed on May 2, 2019. The Commonwealth filed an answer to the amended PCRA petition, and this Court issued a notice of intent to dismiss ("NID") that petition.[1]

---

[1] The undersigned did not become involved in Mr. Robinson's case until after the NID was entered. It is now noted that Mr. Robinson filed his pro se PCRA petition in both Case 1 and Case 2 in 2015. No direct appeal from Case 2 appears to have ever been filed, and – as a result – the judgement of sentence for Case 2 became final in 2012, i.e., after denial of Mr. Robinson's post-sentence motions as a matter of law and the lack of a direct appeal. Mr. Robinson's PCRA filings as they relate to Case 2 are, the Court believes, time barred. See 42 Pa. C.S. §9545(b)(1).

4

Mr. Robison submitted a response to the NID, and this Court – on December 5, 2019 – entered the Order dismissing Mr. Robinson's amended PCRA petition without a hearing.

Mr. Robinson timely appealed the Order and filed a Pa.R.A.P. 1925(b) statement ("Concise Statement") in accordance with this Court's directive to do so.

## II    Mr. Robinson's Allegations Of Error

Mr. Robinson's Concise Statement advances five purported errors. None provide a basis to reverse or vacate the Order.

### A.    The Court Did Not Error In Failing To Find Trial Counsel Ineffective (i) For His Handling Of The Mistrial and Jury Instructions Regarding Murder Or (ii) For Not Moving To Dismiss Mr. Robinson's Second Trial As A Possible Double Jeopardy Argument.

In Mr. Robinson's first trial, the Court instructed the jury as follows regarding murder:

> At this point I'm going to give you some instructions that are more particular to this case and I ask that you pay especially close attention.
>
> * * *
>
> [Mr. Robinson] is charged with taking the life of Davon Williams by criminal homicide. There are three possible verdicts that you might reach in this case, not guilty or guilty of one of the following crimes: first degree murder or third degree murder.
>
> Before defining each of these crimes I will tell you about malice which is an element of murder. A person who kills must act with malice to be guilty of any degree or murder. The word malice, as I'm using it, has a special legal meaning. It does not mean hatred, spite or ill-will.

5

Malice is a shorthand way of referring to any three different mental states that the law regards as being bad enough to make a killing murder.

The type of malice is different for each degree of murder. Thus, for first degree murder a killing is with malice if the perpetrator acts with an intent to kill, or, as I will explain later, the killing is willful or deliberate or premeditated.

For third degree murder a killing is with malice if the perpetrator's actions show his wanton and willful disregard of an unjustified and extremely high risk that his conduct would result in death or serious bodily injury to another.

In this form of malice the Commonwealth need not prove that the perpetrator specifically intended to kill another. The Commonwealth must prove however that he took action while consciously, that is knowingly, disregarding the most serious risk that he was creating and by disregarding that risk he demonstrated his extreme indifference to the value of human life.

I'll charge you now regarding first degree murder. The defendant has been charged with the crime of first degree murder. First degree murder is a murder in which the perpetrator has the specific intent to kill. To find the defendant guilty of this crime you must find that the following three elements are proven beyond a reasonable doubt. One, that Davon Williams is dead. Two, that the defendant killed him. Three, that the defendant did so with the specific intent to kill and with malice. A person has the specific intent to kill if he has a fully formed intent to kill and is conscious of his own intention.

As my earlier definition of malice indicates, a killing by a person who has the specific intent to kill is a killing with malice. Stated differently, a killing is with the specific intent to kill if it is willful or deliberate or premeditated. The specific intent to kill including the premeditation needed for first degree murder does not require planning or previous thought for any particular length

6

of time. It can occur quickly. All that is necessary is that there is time enough so that the defendant can and does fully form an intent to kill and is conscious of that intention.

When deciding whether the defendant had the specific intent to kill, you should consider all the evidence regarding his words and conduct and attending circumstances that may show his state of mind. If you believe that the defendant intentionally used a deadly weapon on a vital part of the victim's body, you may regard that as an item of circumstantial evidence if you choose to infer that the defendant had the specific intent to kill.

If you find that the defendant used a firearm in committing acts constituting murder and that the defendant did not have a license to carry that firearm as required by law, you may regard that as one item of circumstantial evidence on the issue of whether the defendant intended to commit the crime of murder as otherwise charged.

It is for you to determine what weight, if any, you will give to that item of circumstantial evidence. Evidence of non-licensure [of a firearm] alone is not sufficient to prove that the defendant intended to commit the offense of murder.

I'm going to charge you now on third degree murder. Third degree is any killing with malice that is not first degree murder. The defendant has been charged with third degree murder. To find the defendant guilty of this crime you must find that the following three elements have been proven beyond a reasonable doubt. One, that Davon Williams is dead. Two, that the defendant killed him. Three, that the defendant did so with malice. The word malice, as I'm using it, has a special legal meaning. It does not mean simply hatred, spite or ill-will. It is a shorthand way of referring to a particular mental state that the law regards as making a killing murder. For any killing to be with malice if the perpetrator's actions shows his wanton and willful disregard of an unjustified and extremely

7

high risk that his conduct would result in death or serious bodily injury to another. In this form of malice the Commonwealth need not prove that the perpetrator specifically intended to kill another. The Commonwealth must prove however that the perpetrator took action while consciously, that is knowingly, disregarding the most serious risk that he was creating and that by his disregard of that risk the perpetrator demonstrated his extreme indifference to the value of human life.

When deciding whether the defendant acted with malice you should consider all the evidence regarding his words, conduct and attending circumstances that may show his state of mind. If you believe that the defendant intentionally used a deadly weapon on a vital part of the victim's body, you may regard that as an item of circumstantial evidence that you may, if you choose, to infer that the defendant acted with malice.

I have defined the elements of the two types of criminal homicide that you might possibly find in this case. Beginning with the most serious they are in order of seriousness first degree murder and third degree. You have the right to bring in a verdict finding the defendant not guilty or finding him guilty of one of these two types of criminal homicide.

It may help you to remember each type of criminal homicide if I review some highlights. First degree murder requires a specific intent to kill. Third degree murder is any other murder.

* * *

Now regarding the homicide there are two lines on the verdict slip. You will see this. I'm sure it will be self-explanatory when you do see it. There is third degree [sic] murder and third degree murder listed. With respect to the homicide charge, in considering your verdict consider the charges in the order in which they appear on the verdict slip. First consider the charge of first degree murder. If you find the defendant guilty of first degree murder, indicate that and you need not

8

deliberate any further. If you find the defendant not guilty of first degree murder, then consider third degree murder. When you see the verdict slip that will be very clear for you.

See First Trial Transcript ("FTT") at 391-397 & 405-406.

Eventually, the jury submitted a note to the Court stating that it was deadlocked. See id. at 415. The Court subsequently informed the jury that it should continue to deliberate in an attempt to reach a verdict. Id. at 417-419. After further deliberations, the jury again wrote to the Court, noting that they were deadlocked. Id. at 420-22. The Court then polled the jury, and each member thereof stated that he or she did not believe further deliberations would cause the jury to reach a unanimous verdict. Id. at 420-424. As a result, the Court found that the jury, which had been deliberating for almost two full days, was, indeed, deadlocked. Id. at 424. The Court then declared a mistrial for reasons of manifest necessity. Id.

According to Mr. Robinson, trial counsel should have objected to the declaration of a mistrial; requested that the Court instruct the jury to proceed to considering the charge of third degree murder; and finally, following the mistrial, moved to have Mr. Robinson's second trial dismissed as a Double Jeopardy violation. See Concise Statement at ¶ 3; see also Amended PCRA Petition at 7-8. Because trial counsel took no such actions, Mr. Robinson maintains that he was ineffective and that this Court erred in not so finding.

The legal standard for determining whether or not counsel is ineffective is well-settled:

9

[C]ounsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him. . . . Accordingly, to prove counsel ineffective, the petitioner must demonstrate that (1) the underlying legal issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) the petitioner was prejudiced by counsel's act or omission. A claim of ineffectiveness will be denied if the petitioner's evidence fails to satisfy any one of these prongs.

Commonwealth v. Roane, 142 A.3d 79, 88 (citation omitted).

There is no merit to Mr. Robinson's contentions regarding the Court's declaration of mistrial and jury instructions or his retrial. The Court properly instructed the jury on first- and third-degree murder, including the portion of said charge informing the jury to initially consider first-degree murder before deliberating on third-degree. See Commonwealth v. Hart, 565 A.2d 1212, 1216-18 (Pa. Super. Ct. 1989) ("we find that a progression charge in a homicide case is not improper"). Indeed, the jury was (i) informed of the elements of each homicide offense, and Mr. Robinson makes no claim as to said portion of the jury charge; (ii) told to consider one offense before the other, wrongly challenged by Mr. Robinson as revealed by Hart; and (iii) instructed that it could find Mr. Robinson not guilty or guilty of only one of the murder offenses, first- or third-degree. No error occurred. The jury simply could not settle on a verdict.

A trial court may declare a mistrial and discharge a jury when the jury is unable to reach a verdict and is hopelessly deadlocked. See Commonwealth v. Murry, 447 A.2d 612, 613 (Pa. 1982) (a mistrial may be granted due to manifest

10

necessity, which "justifies discharge of a jury[ ] when it appears there is no reasonable probability of agreement on a verdict"). When that occurs, i.e., when a "jury is discharged for failure to reach a verdict," retrial is permissible. Commonwealth v. Santiago, 424 A.2d 870, 873 (Pa. 1981).

Because the Court properly charged the jury regarding first- and third-degree murder, was forced to declare a mistrial after the jury became hopelessly deadlocked and could not reach a verdict, and appropriately ordered that Mr. Robinson be retried as a result, Mr. Robison's arguments regarding his trial counsel's failure to object to those actions lack merit. Counsel "cannot be considered ineffective for failing to assert a meritless claim[,]" see Commonwealth v. Durst, 559 A.2d 504, 505 (Pa. 1989), or for failing to seek a change in the law, see Commonwealth v. Bryant, 855 A.2d 726, 749 (Pa. 2004) ("counsel cannot be deemed ineffective for failing to advance the change in the law"). Accordingly, the Court did not err in rejecting as unmeritorious Mr. Robinson's contention that trial counsel was ineffective in his handling of the homicide instructions, mistrial, and the ability of the Court to retry his client.

### B. The Court Did Not Err In Failing To Find Appellate Counsel Ineffective Regarding The Court's Instructions For Carrying A Firearm Without A License.

During Mr. Robinson's second trial, the Court – when instructing on the specific intent to kill necessary for a conviction of first-degree murder – stated the following to the jury:

> When deciding whether the defendant had the
> specific intent to kill, you should consider all the

11

evidence regarding his words and conduct and the attending circumstances that show his state of mind. If you believe that the defendant intentionally used a deadly weapon on a vital part of the victim's body you may regard that as an item of circumstantial evidence from which you may, if you choose, infer that the defendant had the specific intent to kill.

If you find that the defendant used a firearm in committing acts constituting murder and that the defendant did not have a license to carry that firearm as is required by law, you may regard that as one item of circumstantial evidence on the issue of whether the defendant intended to commit the crime of murder as otherwise charged. It is for you to determine what weight, if any, you will give to the item of circumstantial evidence. Evidence of non-licensure alone is not sufficient to prove that the defendant intended to commit the offense of murder.

See Second Trial Transcript at 489-90. Trial counsel objected to "carrying a firearm without a license being circumstantial evidence of intent to commit first degree murder." Id. at 452. Said objection and argument, however, were not advanced on direct appeal.

Mr. Robinson now contends that the Court erred in not finding appellate counsel to be ineffective for failing to argue on appeal that it was error to instruct the jury that Mr. Robinson's carrying a firearm without a license could be relevant to the intent necessary for a first-degree murder conviction. See Concise Statement at ¶ 4. Such an argument fails.

In Commonwealth v. Hall, 830 A.2d 537, 545-550 (Pa. 2003), our Supreme Court held that an instruction that permits, rather than requires, a jury to infer that carrying a firearm without a license constituted circumstantial evidence of

12

intent is valid so long as there is also a rational way for the jury to make the connection permitted by the inference. Here, the instruction clearly involves a permissible – not mandatory – inference, and the facts of this case provide a rational way to connect Mr. Robinson's firearm offense to the murder:  days before the homicide, Mr. Robinson and the victim had an argument; on the day of the homicide, Mr. Robinson spoke aggressively to the victim without provocation at a bar; the two men continued their argument outside the bar; and then Mr. Robinson shot and killed the victim.

That the instruction here was proper under the law is recognized by Mr. Robinson, who acknowledges the existence of Hall in the amended PCRA petition and states:  "[Hall] approved of the instruction so long as it is permissive and not mandatory.  However, [Mr. Robinson] desires to assert an objection to the majority reasoning in that decision and contends instead that the reasoning of [the Hall dissent] . . . is the correct analysis." See Amended PCRA Petition at 10.

Given the state of the law, the evidentiary record, and Mr. Robinson's concession that the instruction as given was of the type approved in Hall, appellate counsel had no basis to further advance an argument that this Court erred in instructing the jury about the interplay between the specific intent necessary for first-degree murder and carrying a firearm without a license.  Such a claim was not supported by the law or facts; it instead depended upon a change in the law.  As noted above, counsel cannot be ineffective for failing to

13

assert a meritless claim, see Durst, 559 A.2d at 505, or for failing to seek a change in the law, see Bryant, 855 A.2d at 749. Accordingly, the Court did not err in rejecting Mr. Robin's argument that appellate counsel rendered ineffective assistance.

**C.  The Court Did Not Err In Declining To Find That Mr. Robinson Was Entitled To PCRA Relief As A Result Of The Denial Of His Pretrial Request To Remove Trial Counsel From The Case.**

According to Mr. Robinson, this Court erred in not granting him relief pursuant to the claim advanced in paragraph 19(D) of his amended PCRA petition. See Concise Statement at ¶ 5. Said claim concerned the Court's pretrial denial of Mr. Robinson's request for new counsel. The Court properly denied the claim set forth in paragraph 19(D) of Mr. Robinson's amended PCRA petition.

Between his first and second trial, Mr. Robinson informed the Court that he "no longer wanted Mr. Waltman[, i.e., the attorney who represented him at his first trial and, ultimately, at his second trial,] to represent [him]." See June 3, 2011, Motion Transcript at 2. After having a hearing on the issue, the Court denied Mr. Robinson's request to replace Mr. Waltman, id. at 8-9, and the parties eventually proceeded to trial. Mr. Robinson did not advance the denial of his oral motion for new trial counsel on appeal.

He did, however, raise such a claim in paragraph 19(D) of his amended PCRA petition, contending that he was "denied his constitutional rights to due process, fundamental fairness and the effective assistance of counsel by virtue

14

of the [C]ourt's denial of his meritorious pretrial motion for change of trial counsel due to conflict of interest, and the . . . [C]ourt's failure to inquire ex parte into the nature of the conflict prior to rejecting the motion." See Amended PCRA Petition at 12. Such an assertion sounds in trial court error and, given that it was raised pretrial, could have been advanced on direct appeal. Because Mr. Robinson did not argue the claim on direct appeal, he waived it for purposes of the PCRA. See 42 Pa. C.S. § 9543(a)(3) (to be eligible for PCRA relief, a petitioner must plead and prove that the allegation of error purportedly entitling the petitioner to relief has not been waived); see also 42 Pa. C.S. § 9544(b) ("an issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding").

This Court, therefore, did not err in denying the claim advanced in paragraph 19(D) of Mr. Robinson's amended PCRA petition. He should have advanced the issue on direct appeal; and having not done so, he waived the claim.[2]

_____

[2] The Court notes that the claim advanced in paragraph 19(D) of the amended PCRA petition is not framed in terms of ineffective assistance of appellate counsel for failing to raise on appeal the Court's denial of Mr. Robinson's pretrial request for new counsel. In addition, the allegation of error pertaining to paragraph 19(D) of the amended PCRA petition contained in Mr. Robinson's Concise Statement is also not predicated on ineffective assistance of appellate counsel. Both claims – i.e., that advanced in paragraph 19(D) of the amended PCRA petition and that contained in paragraph 5 of the Concise Statement – involve this Court's purported errors prior to trial.

15

**D.    The Court Did Not Err In Failing To Hold A Hearing On Mr. Robinson's Claims.**

Mr. Robinson argues that the Court erred in failing to hold a hearing on the following claims advanced in his amended PCRA petition:  (i) ineffective assistance of trial counsel for failing at Mr. Robinson's second trial to call a witness who had testified at his first trial ("Claim 1"); (ii) ineffective assistance of trial counsel for (a) failing to object to the declaration of mistrial and the homicide-progression charge and (b) failing to move for the dismissal of the second trial on Double Jeopardy grounds (collectively, "Claim 2"); (iii) ineffective assistance of appellate counsel for failing to raise on appeal a challenge to the Court's instruction regarding the interplay between specific intent for first-degree murder and carrying a firearm without a license ("Claim 3"); and (iv) the Court's denial of Mr. Robinson's pretrial request for new counsel ("Claim 4").  See Concise Statement at ¶ 2.  Each of those claims, Mr. Robinson asserts, "required an evidentiary hearing . . . [, and the s]ummary denial of the ineffectiveness claims deprived [him] of a meaningful opportunity to prove his entitlement to relief."  Id.  Such arguments lack merit.

A PCRA petitioner is "not entitled to a PCRA hearing as a matter of right."  Commonwealth v. Johnson, 945 A.2d 185, 188 (Pa. Super. Ct. 2008) (citation omitted).  The PCRA court can "decline to hold a hearing if there is no genuine issue concerning any material fact and the petitioner is not entitled to post-conviction collateral relief, and no purpose would be served by any further proceedings."  Id. (citation omitted).

16

Here, Claim 2, Claim 3, and Claim 4 have been addressed above; and each failed for lack of merit. There were no issues of material fact that could have been presented to entitle Mr. Robinson to relief on those meritless claims.

Regarding Claim 1, Mr. Robinson does not, in his Concise Statement, include as alleged error the Court's denial of Claim 1, which was advanced in the amended PCRA petition at paragraph 19(A). Mr. Robinson only contends that it was error to dismiss Claim 1 without a hearing. Compare Concise Statement at ¶¶ 3-6; id. at ¶ 2. The Court, however, did not believe a hearing on Claim 1 was needed.

The witness that trial counsel did not call in Mr. Robinson's second trial – i.e., Mr. Robert Young – testified at Mr. Robinson's first trial. See FTT at 71-82. Mr. Robinson relied on the transcript of Mr. Young's testimony to support the ineffectiveness claim he advanced in his amended PCRA petition. See Amended PCRA Petition at 16, ¶ D; see also Petitioner's Response To Notice Of Intention To Dismiss And Supplemental Certification Of Witnesses ("NID Response") at 8 ("Petitioner is relying upon Young's prior sworn testimony in support of his claim and not on any new testimony from him"). Given that Mr. Young's testimony already existed and Mr. Robinson affirmed that no new testimony from Mr. Young was needed, the Court, which found Claim 1 to be meritless (a finding Mr. Robinson has not challenged in his Concise Statement), determined that there were "no genuine issue[s] concerning any material fact and the petitioner is not entitled to post-conviction collateral relief, and no

17

purpose would be served by any further proceedings" with respect to Claim 1. Johnson, 945 A.2d at 188 (citation omitted).

Accordingly, based on the foregoing, the Court did not believe a hearing was warranted on Claim 1, Claim 2, Claim 3, or Claim 4. The record was sufficiently developed to permit the Court to determine that each of those claims failed. No further evidence was needed, not even from Mr. Young, as Mr. Robinson acknowledges. See NID Response at 8.

E.    **The Court Did Not Err In Declining To Find That The Cumulative Prejudicial Effect Of All Prior Counsel's Conduct Entitled Mr. Robinson To PCRA Relief.**

Finally, Mr. Robinson asserts that the Court "erred in declining to find that [he] was unfairly prejudiced by the cumulative prejudicial effect of prior counsels' errors and omissions, as well as Trial Court error (which are identified in ¶¶19(A) – (D) of the Amended PCRA Petition." See Concise Statement at ¶ 6. In addition, Mr. Robinson maintains that "[t]he cumulative effect of these prejudicial errors and omissions adversely affected the truth-determining process, denied [him] a fair trial, and entitled him to a post-conviction evidentiary hearing and relief on the merits." Id. Those arguments fail.

Our Supreme Court has:

> repeatedly held that no number of failed ineffectiveness claims may collectively warrant relief if they fail to do so individually. Thus, to the extent claims are rejected for a lack of arguable merit, there is no basis for an accumulation claim. When the failure of individual claims is grounded in lack of prejudice, however, then the cumulative prejudice from those individual claims may be properly assessed.

18

<u>Commonwealth v. Koehler</u>, 36 A.3d 121, 161 (Pa. 2012). The claims advanced in paragraphs 19(A) through 19(D) of the amended PCRA petition – i.e., Claim 1, Claim 2, Claim 3, and Claim 4 – were, as noted above, all rejected for lack of merit. No basis for "an accumulation claim" existed. Accordingly, the Court did not err by failing to grant Mr. Robinson PCRA relief by accumulating the alleged prejudice involved in said claims.

Mr. Robinson's final assertion of error should, therefore, be denied.

## III.  Conclusion

For the foregoing reasons, the Superior Court should affirm this Court's Order of December 5, 2019, dismissing Mr. Robinson's amended PCRA petition.

BY THE COURT:

Dated: 3|11|30

_____ J.
Susan Evashavik DiLucente

19